FISKE, Appellant,

v.

ROONEY et al., Appellees.

[Cite as *Fiske v. Rooney* (1998), 126 Ohio App.3d 649.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 97CA2494.

Decided March 19, 1998.

*Fishman & Fey Co., L.P.A.,* and *Elliot T. Fishman,* for appellant.

*Reminger & Reminger* and *Thomas D. Hunter,* for appellee Richard Rooney, M.D.

*Bannon, Howland & Dever Co., L.P.A., Robert E. Dever* and *Steven M. Willard,* for appellee U.S. Health Corporation of Southern Ohio.

---

STEPHENSON, Presiding Judge.

This is an appeal from various summary judgments entered by the Common Pleas Court of Scioto County, Ohio, in favor of Richard Rooney, M.D. and U.S. Health Corporation of Southern Ohio ("U.S. Health Corp."), defendants below and appellees herein, on the claims brought against them by William B. Fiske, plaintiff below and appellant herein. The following errors are assigned for our review:

"I. The trial court abused its discretion in denying plaintiff–appellant the opportunity to obtain discovery which could directly affect his ability to respond to the motions for summary judgment.

"II. The trial court erred in giving substantial consideration to the affidavit of Wayne Wheeler, M.D., which affidavit has already been disallowed by this court.

"III. The trial court erred in establishing that appellees met their burdens to provide affirmative evidence as to why summary judgment should be granted.

"IV. The trial court erred in determining that no questions of material fact (or competing reasonable inferences thereof) exist in this case, despite findings previously determined by the court of appeals.

"V. The trial court erred by refusing to consider or failing to give sufficient weight to the affidavit of William B. Fiske.

"VI. The trial court erred in failing to consider and/or give sufficient weight to other essential evidence, such as the affidavit of James Glandon.

"VII. The trial court erred in refusing to consider or give substantial weight to the affidavit and deposition testimony of Joan E. Wurmbrand, M.D.

"VIII. The trial court erred in determining that no prima facie case existed for violation of Ohio Revised Code Chapter 4112, despite the contrary determination by this court of appeals.

"IX. The trial court erred in failing to consider plaintiff's claim for intentional or negligent infliction of emotional distress.

"X. The trial court erred in failing to make any ruling regarding appellees' defenses of violation of the statute of limitations."

The record reveals the following facts pertinent to this appeal. On February 20, 1993, appellant was taken to the emergency room at Southern Ohio Medical Center ("SOMC"), an affiliate hospital of U.S. Health Corp., with severe abdominal pain. Appellant informed the hospital staff upon his arrival that he was HIV positive (i.e., infected with the Human Immunodeficiency Virus believed to cause Acquired Immune Deficiency Syndrome or "AIDS"). He was given various tests and x-rays and was later advised by Dr. Robert Dale, the emergency room physician, that he might have appendicitis. It was the recommendation of Dr. Dale that a surgeon be consulted. Dr. Dale left appellant's presence but returned a short time later to inform him that Dr. Richard Rooney, the surgeon on call and appellant herein, refused to examine and evaluate him due to his HIV status. Approximately eight to nine hours after his arrival at SOMC, appellant was transferred to Doctor's Hospital, North, in Columbus, Ohio, at his own expense. He was examined and then admitted for several days of observation but was ultimately released without surgery having ever been performed.

Appellant commenced the action below on February 18, 1994, alleging claims of medical negligence, discrimination, and infliction of emotional distress. He demanded in excess of $150,000 in compensatory damages and $300,000 in punitive damages. Both appellees filed answers denying liability and raising a number of defenses. On June 23, 1994, U.S. Health Corp. filed a motion for

summary judgment arguing, *inter alia,* that appellant was not "refused treatment because he was HIV positive." This argument was supported by the affidavit of Wayne B. Wheeler, M.D., President of Wayne B. Wheeler, Inc., which contracts to operate the emergency room at SOMC. Dr. Wheeler attested that appellant "was given appropriate medical treatment" and that "[n]o discrimination against HIV patients is practiced." It was conceded by the affiant that Dr. Rooney had declined to accept appellant for treatment. However, the affiant continued, Dr. Rooney did agree to take appellant back if he was unsuccessful in his search for medical assistance in Columbus, Ohio. U.S. Health Corp. also argued that, in any event, there was no compensable injury here because appellant ultimately did not require surgery. An opposing memorandum was filed, but, on July 25, 1994, partial summary judgment was entered in favor of U.S. Health Corp.

We reversed that judgment in *Fiske v. Rooney* (1995), 105 Ohio App.3d 269, 663 N.E.2d 1014 (*Fiske I* ), wherein this court held that the affidavit of Dr. Wheeler was insufficient under Evid.R. 601(D) because it did not set forth any of the requisite information necessary to qualify him to give an expert opinion. Thus, we determined, U.S. Health Corp. had not carried its burden on summary judgment. It was also the ruling of this court that appellant had set forth a *prima facia* case for discrimination and had sufficiently alleged a claim for infliction of emotional distress. Neither of these issues had been addressed by the evidence, and, therefore, the judgment was reversed and the cause remanded for further proceedings.

On remand, both appellees renewed the drive for summary judgment. U.S. Health Corp. filed its motion on November 6, 1996, and again made the argument that appellant was not refused treatment because of his HIV status. An affidavit by Dr. Wheeler, substantially similar if not identical to the one we rejected in *Fiske I*, was again submitted in support of that argument. U.S. Health Corp. also relied on deposition testimony by appellant to the effect that he agreed to seek treatment in Columbus after Dr. Dale informed him that he would not be seen by a surgeon at SOMC. It was argued that this admission demonstrated a cooperative decision on the part of appellant to seek treatment elsewhere. Dr. Rooney then filed a motion for summary judgment on November 18, 1996, wherein he denied ever having refused treatment for appellant. This was supported by his own deposition testimony during which he recounted the substance of his conversation with Dr. Dale (the emergency room physician). Dr. Rooney testified that he "never" told Dr. Dale that he would not see, or treat, the patient.

Appellant responded to these motions, at first, by requesting an extension of time so that he could take the depositions of Drs. Dale and Wheeler. U.S. Health Corp. "strenuously object[ed]" to such an extension being granted, and the trial

court denied his request. Appellant then filed several memoranda in opposition to summary judgment. First, he argued that the motion by U.S. Health Corp. should be overruled because it presented (substantially) the same arguments and evidentiary materials as were reviewed and rejected by this court in *Fiske I*. Further, appellant submitted his own affidavit wherein he attested that "Dr. Dale told me that Dr. Rooney, who was the surgeon on call, refused to see me and evaluate me, because I was HIV-positive." The affiant continued that "Dr. Dale said, 'I'm sure you have experienced this before,'" which, appellant contends, was in reference to the refusal to provide medical care due to his HIV status. These statements were corroborated by the affidavit of James Glandon, who was an eyewitness to the discourse between appellant and the emergency room physician. An affidavit by Joan E. Wurmbrand, M.D., was also submitted in opposition to summary judgment. Dr. Wurmbrand attested that she had reviewed the medical records in this case and that, in her opinion, SOMC "significantly deviated from the standard of care for emergency rooms in hospitals" in that appellant was neither seen by a surgeon nor admitted as a patient and was "forced to be transported to Columbus" for evaluation. These materials were found to be insufficient.

On January 14, 1997, the trial court entered two separate judgments sustaining the motions filed by appellees. The court found that Dr. Rooney did provide a surgical consultation and that appellant "voluntarily agreed" to be transferred to Columbus. Thus, the court reasoned, the "essential elements of this cause cannot be proven." It was conceded that appellant's affidavit contradicted the gist of the deposition testimony upon which the court was supposedly basing its decision. However, the court reasoned, the affidavit could not be considered if it conflicted with the deposition and certainly could not be used to defeat appellees' motions for summary judgment. Appellant's claims were therefore ordered dismissed, and this appeal followed. Additional facts will be discussed where pertinent to a particular assignment of error.

 Appellant's first assignment of error is directed at the trial court's refusal to grant him a continuance on the summary judgment proceedings so that he could obtain the deposition testimony of Drs. Dale and Wheeler. We note at the outset that the decision to grant or deny a continuance is generally relegated to the sound discretion of the trial court. See *State v. Grant* (1993), 67 Ohio St.3d 465, 479, 620 N.E.2d 50, 66–67; *State v. Lorraine* (1993), 66 Ohio St.3d 414, 423, 613 N.E.2d 212, 220. Similarly, the provisions of Civ.R. 56(F) allow for the trial court to grant a continuance during summary judgment proceedings so that additional discovery may be had to oppose a motion. This too is relegated to the sound discretion of the trial court. See, generally, *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752, 755; *Glimcher v.*

*Reinhorn* (1991), 68 Ohio App.3d 131, 138, 587 N.E.2d 462, 467. The court's discretion in granting continuances pursuant to Civ.R. 56(F) should be exercised liberally in favor of the nonmoving party. *Whiteleather v. Yosowitz* (1983), 10 Ohio App.3d 272, 10 OBR 386, 461 N.E.2d 1331; *Carrier v. Weisheimer Cos.* (Feb. 22, 1996), Franklin App. No. 95APE04–488, unreported, 1996 WL 76317. Nevertheless, continuances are not required under Civ.R. 56(F), and the trial court's decision to deny one should not be reversed absent a showing of an abuse of discretion. *Carlton v. Davisson* (1995), 104 Ohio App.3d 636, 648, 662 N.E.2d 1112, 1119–1120. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is arbitrary, unreasonable, and unconscionable. *Malone v. Courtyard by Marriott, L.P.* (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242, 1248–1249; *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218, 222; *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855, at paragraph two of the syllabus. We are also admonished that, when applying an abuse of discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. *In re Jane Doe I* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184–1185; *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308–1309. This is a difficult standard to meet. However, under the particular facts and circumstances of this case, we agree that it was met here.

■ After the cause *sub judice* was remanded following our decision in *Fiske I*, the trial court entered a pretrial order setting a discovery cutoff date of December 2, 1996, and a deadline for summary judgment motions and opposing memoranda of November 15 and December 13. It is uncontroverted that the depositions of Drs. Wheeler and Dale were scheduled for November 18, 1996, which was well within the discovery cutoff date set by the court. It is also uncontroverted that counsel for Dr. Rooney later notified appellant's counsel that he would be in trial on that day and could not attend the depositions. As a professional courtesy, counsel for appellant cancelled the depositions and rescheduled them for January 1997 to accommodate the schedules of the attorneys involved. He then requested a continuance of the trial court so that the rescheduled depositions could be taken for purposes of responding to the motions for summary judgment. Counsel for Dr. Rooney filed a memorandum corroborating the representations made by appellant's counsel but took no position one way or the other with respect to the request for continuance. U.S. Health Corp., on the other hand, filed a memorandum "strenuously object[ing]" to the continuance. It was argued that the case had already been pending for over two and one-half years, that appellant did not timely schedule the depositions of these physicians, that appellant cancelled those depositions of his own free will, and that U.S. Health Corp. should not be penalized as a result. The lower court

agreed with these arguments and denied the continuance. This was an abuse of discretion.

There is no clear indication in the record that appellees colluded with one another to defeat appellant's attempts to depose Drs. Dale and Wheeler. By the same token, however, it is clear that appellant was "sandbagged" by the events that transpired below. Counsel for Dr. Rooney conceded that he contacted appellant's counsel and informed him that he could not attend these depositions. While appellant was not technically required to cancel the depositions at that point, it is also a considerable stretch to argue that they were cancelled "voluntarily." There is no serious contention that counsel for Dr. Rooney did not want to attend these depositions. Had his scheduling conflicts been taken before the court, there is certainly a good chance that the depositions would have been ordered rescheduled. This court would *not* be favorably disposed to such testimony being taken from the witnesses without counsel being present. Appellant's counsel alleviated any need to take this matter before the trial court by rescheduling the depositions for a time that accommodated everyone's schedule. Given that the Ohio Rules of Civil Procedure contemplate resolution of discovery problems without involvement by the court, appellant's actions were manifestly reasonable. It was also reasonable to expect that the parties would not oppose a continuance particularly in light of the fact that it was requested for reasons that benefited Dr. Rooney.

U.S. Health Corp. nevertheless filed strenuous objections to the request for a continuance. Suffice it to say that we find no merit in either those objections or in the reasons set forth by the court below. It is true that this case had already been pending for two and one-half years when the request was made. However, one of those years was devoted fully to the appellate review of an improper summary judgment previously granted to this appellee. See *Fiske I.* Moreover, contrary to the assertions of U.S. Health Corp., the depositions of Drs. Dale and Wheeler were originally scheduled before the discovery cutoff date. They were not untimely. Finally, as noted above, the depositions were only "voluntarily" cancelled in the technical sense. The reality of the situation is that they were cancelled to accommodate opposing counsel. A professional courtesy was extended to Dr. Rooney, and U.S. Health Corp. sought to exploit that courtesy for its own benefit. This court will not play a part in such tactics nor will we permit the lower court to do so. Cases should be decided on their merits whenever possible. *State ex rel. Montgomery v. R & D Chem. Co.* (1995), 72 Ohio St.3d 202, 204, 648 N.E.2d 821, 822–823; *Perotti v. Ferguson* (1983), 7 Ohio St.3d 1, 3, 7 OBR 256, 257, 454 N.E.2d 951, 952–953; *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 297 N.E.2d 113, 122. It is the opinion of this court that justice is best served

in the cause *sub judice* by allowing the depositions of Drs. Dale and Wheeler to take place.

■ It has been counterargued that the judgment of the trial court should nevertheless be affirmed because the depositions of these physicians will not aid in the resolution of this matter. We disagree. Appellant has presented evidence to show that Dr. Dale told him that Dr. Rooney would not provide treatment due to his HIV status. Dr. Rooney denies having ever made such statements to Dr. Dale. Obviously, the crucial element here is Dr. Dale, and nobody has presented any evidence from him. The evidence adduced by Dr. Rooney and appellant clearly conflict with each other and, while perhaps not dispositive, Dr. Dale's account of these events will lend significant weight either to the claims of appellant or the defenses of appellees. We also agree with appellant that a deposition of Dr. Wheeler is appropriate so as to cross-examine him with regard to some of the statements he makes in his affidavit. For all these reasons, the first assignment of error is well taken and sustained.

■ We shall jointly consider the second, third, and fourth assignments of error, as they all posit that the lower court erred in granting summary judgment to appellees. Our analysis begins from the standpoint that appellate review of summary judgment is conducted under a *de novo* standard. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327, 1328–1329; *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 43–44; *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271–272. That is to say that we afford no deference whatsoever to the trial court's decision, see *Tardy v. Norfolk S. Corp.* (1995), 103 Ohio App.3d 372, 379, 659 N.E.2d 817, 821; *Oiler v. Willke* (1994), 95 Ohio App.3d 404, 407, 642 N.E.2d 667, 669; *Shepherd v. United Parcel Serv.* (1992), 84 Ohio App.3d 634, 641, 617 N.E.2d 1152, 1156–1157, and conduct our own independent review to determine whether summary judgment was appropriate. *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236, 241, 659 N.E.2d 317, 320; *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10, 11–12; *Howard v. Wills* (1991), 77 Ohio App.3d 133, 139, 601 N.E.2d 515, 518–519. Summary judgment under Civ.R. 56 is deemed appropriate when the movant demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party, said party being entitled to have the evidence construed most strongly in his favor. See, generally, *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, at paragraph three of the syllabus; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. It should also be noted that it is the party

moving for summary judgment under Civ.R. 56 that bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264, 273; *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 120, 570 N.E.2d 1108, 1113–1114; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Applying these principles to the cause *sub judice*, we are not persuaded that summary judgment was properly entered below.

U.S. Health Corp. relied on the aforementioned affidavit of Dr. Wheeler as well as appellant's deposition testimony to show that it was entitled to judgment in its favor as a matter of law. First, as appellant contends, the affidavit of Dr. Wheeler is substantially similar (if not identical) to the affidavit that we determined in *Fiske I* to be insufficient. No differences in these two affidavits have been pointed out to us by U.S. Health Corp. in its brief, and we have found none in our own review of those documents. Indeed, it would appear that the affidavit of Dr. Wheeler was submitted by this appellee and considered by the court below in direct defiance of this court's previous ruling in *Fiske I*. U.S. Health Corp. counterargues that the affidavit was "simply used to establish [a] factual basis for the motion." Appellee contends that it "was not given for, or considered, as evidence on the issue of standard of care." We are not persuaded. The lower court expressly cited the affidavit as evidence "that the [appellant] was given appropriate medical treatment." Whatever reason U.S. Health Corp. may have had for resubmitting this affidavit, it is clear that the trial court considered it as evidence with regard to the standard of care. This was erroneous and in direct contravention of the prior ruling of this court. We stand by our previous decision and hold that the affidavit of Dr. Wheeler is insufficient for the same reasons as were set forth in our decision in *Fiske I*.

■ Therefore, if U.S. Health Corp. is to be deemed to have carried its initial burden on summary judgment, it must be on the basis of appellant's deposition testimony. Appellee cites the following portions of that testimony:

"Q. Okay. After he told you * * * that Dr. Rooney didn't want to see you * * * what is the next conversation that you had with Dr. Dale that you recall with respect to a surgeon?

"A. He came back and, let's see, he told me that Dr. Rooney had said that *if there was no other place that would accept me, then he would come in and look.*

"* * *

"Q. Maybe I misread your prior testimony. I thought you agreed with that decision then to come to Columbus; is that not right?

"A. Basically, *and when you're under the care of a physician, the physician is the boss. You do whatever the physician suggests.*

"Q. It seemed like Dr. Dale was trying to do what was best for you at that time so you were following that guidance?

"A. He told me he thought that was the most appropriate thing to do.

"Q. Did you feel comfortable doing that since you had been to Columbus treating with Dr. Neufeld up to that time?

"A. *I didn't like the fact that I had to leave Portsmouth to get treatment, but that seemed to be my only option.*" (Emphasis added.)

To begin, we do not necessarily interpret this testimony the same way as do appellees and the court below. Appellant stated that he had been told that Dr. Rooney would examine him but only "if there was no other place that would accept [him]." Construing that statement most strongly in his favor, as we are required to do under Civ.R. 56(C), we cannot conclude that this was an admission by appellant that Dr. Rooney had agreed to treat him. Reasonable minds could just as easily conclude that the conditions placed on that treatment (*i.e.*, that appellant first exhaust all possible avenues of treatment in Columbus) was tantamount to a refusal of treatment. Similarly, reasonable minds could also conclude that the decision to seek treatment in Columbus was not voluntarily agreed upon. Appellant stated that he agreed to go to Columbus because Dr. Dale had told him that it was the "thing to do" and "when you're under the care of a physician * * * [y]ou do whatever the physician suggests." This would seem to us to be particularly true when one is diagnosed with a possible case of appendicitis. Appellant could hardly be expected to debate the finer points of Dr. Rooney's conditional promise of treatment when he believed himself to be faced with a possible future rupture of his appendix. The trier of fact could reasonably conclude from this evidence that appellant was forced to leave Portsmouth and seek treatment in Columbus.

We would also point out that this admission by appellant is inconsistent with other portions of his deposition testimony. Earlier in that same deposition, appellant testified that Dr. Dale told him that Dr. Rooney was "refusing to see" him altogether on account of his being HIV positive. This was consistent with testimony he gave in an earlier, separate, deposition. These inconsistencies make it unclear whether appellant was actually aware of any conditional offer of treatment. This is a question that should be resolved by the trier of fact, as is the issue of whether any such conditional offer of treatment amounted to a refusal of treatment.

Even assuming *arguendo* that U.S. Health Corp. carried its initial burden on summary judgment with this deposition testimony, it is clear that appellant also carried his burden of rebuttal. The following attestations were set forth in appellant's affidavit:

"18. In my June 1994 deposition, I had indicated that I was never told of any conditional acceptance by Dr. Rooney. That statement was correct.

"19. After my June 1994 deposition and before my September 1996 deposition, I reviewed with my attorney the medical records provided to us in this case. During that review, I learned that there was an allegation that Dr. Rooney would look at me if there was no place else for me to go.

"20. Because of the length of time between the events in the SOMC emergency room and my latest deposition, I slightly confused what had happened to me at the emergency room with what I had reviewed in the medical records.

"21. I repeat that I was never informed that Dr. Rooney would accept me with any conditions."

The argument has been made that this affidavit cannot be considered because it directly contradicts appellant's deposition testimony. It is asserted that such contradiction cannot be used to create a factual issue so as to defeat a motion for summary judgment. We will discuss that point in our analysis of appellant's fifth assignment of error, *infra*, and will not repeat it here. Suffice it to say, however, that even if this affidavit is disregarded, there is still the affidavit of James Glandon wherein the affiant states that "[a]t no time during those conversations [with Dr. Dale] was Mr. Fiske ever told that Dr. Rooney would conditionally accept seeing him." This is evidence above and beyond the affidavit of appellant and creates a genuine issue of material fact as to whether he was refused treatment and whether such refusal was due to his HIV status.

With respect to Dr. Rooney, there is no question that the initial burden on summary judgment was carried. His affidavit emphatically denied ever refusing treatment to appellant. By the same token, however, the affidavits of appellant and Glandon were sufficient to carry the burden of rebuttal. It will be up to the trier of fact to determine which of these two contradictory version of events is the correct one. For all these reasons, the trial court erred in granting summary judgment to appellees. The second, third, and fourth assignments of error are accordingly sustained.

■ Appellant argues in his fifth assignment of error that the trial court erred by refusing to consider his affidavit. We agree. There is no question that appellant's affidavit conflicts with his prior deposition testimony. In *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123, at paragraph one of the syllabus, the Ohio Supreme Court held that, when a litigant's affidavit in support of a motion for summary judgment is inconsistent with his prior deposition testimony, summary judgment is improper because there exist questions of credibility that can be resolved only by the trier of fact. This court has largely limited the application of *Turner* to those instances where the conflicting deposi-

tion and affidavits are those of the summary judgment movant. See *Push v. A–Best Products, Co.* (Apr. 18, 1996), Scioto App. No. 94CA2306, unreported, 1996 WL 192968. We have generally declined to apply those principles to cases where the conflicting evidentiary materials are submitted by the nonmovant. *Id.* In so ruling, we held that "the non-moving party cannot defeat a motion for summary judgment by submitting an affidavit which, *without explanation*, directly contradicts his previous deposition testimony." (Emphasis added.) *Id.*; see, also, *Steiner v. Steiner* (July 12, 1995), Scioto App. No. 93CA2191, unreported, 1995 WL 416941; *Lemaster v. Circleville Long Term Care, Inc.* (Feb. 22, 1988), Pickaway App. No. 87CA2, unreported, 1988 WL 17187. Our decision in *Push* left open the possibility that a nonmovant could still contradict prior deposition testimony and defeat a motion for summary judgment if his affidavit contained an explanation for the conflict. As set forth above, appellant's affidavit contained the following attestation:

"19. After my June 1994 deposition and before my September 1996 deposition, I reviewed with my attorney the medical records provided to us in this case. During that review, I learned that there was an allegation that Dr. Rooney would look at me if there was no place else for me to go.

"20. Because of the length of time between the events in the SOMC emergency room and my latest deposition, *I slightly confused what had happened to me at the emergency room with what I had reviewed in the medical records.*" (Emphasis added.)

Appellant clearly explains in his affidavit that the conflict between his attestations therein and his deposition testimony was the result of lapse of time and confusion. This confusion is obvious after reading appellant's deposition as a whole. Our review of the transcript reveals that he contradicts himself with respect to this point on several occasions. Given that confusion, as well as the corroborating attestations by Glandon, we conclude that there was a sufficient explanation for the conflict and that the affidavit should have been considered. The fifth assignment of error is accordingly sustained.

We now proceed to the seventh assignment of error, which concerns the affidavit of Dr. Wurmbrand. The court below refused to consider this affidavit on summary judgment, finding that Dr. Wurmbrand did not devote fifty percent of her professional time to the active clinical practice of medicine and, thus, did not satisfy the requirements of Evid.R. 601. Appellant argues that this was error and, again, we agree. The provisions of Evid.R. 601 state, *inter alia*, as follows:

"Every person is competent to be a witness except:

"* * *

"(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician * * * or hospital arising out of the diagnosis, care, or treatment of any person by a physician * * * unless the person testifying is licensed to practice medicine * * * and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school. This division shall not prohibit other medical professionals who otherwise are competent to testify under these rules from giving expert testimony on the appropriate standard of care in their own profession in any claim asserted in any civil action against a physician * * * or hospital arising out of the diagnosis, care, or treatment of any person."

 The lower court cited a specific portion of Dr. Wurmbrand's deposition and concluded "that since 1994 she has been engaged in full-time hospital administration and not in the clinical setting treating patients." We have reviewed the same portion of that deposition and, while finding testimony to support the first half of the court's conclusion, we find nothing that supports the second half. Dr. Wurmbrand testified that she sold her practice in 1993 and, the following year, started as a full-time administrator at St. Ann's hospital. However, we find no testimony by her that this meant that she was no longer treating patients. Her affidavit, submitted in opposition to summary judgment, clarifies this point as follows:

"5. * * * In 1994, I left my private medical practice and became full-time Vice President of Medical Affairs at St. Ann's Hospital.

"6. During my tenure as Medical Director and Vice President of Medical Affairs, *I also continued to see patients, substituting for other doctors and serving in the emergency room at St. Ann's Hospital.*

"* * *

"8. At all times relevant to this case, *I spent at least fifty percent (50%) of my work time involved in the practice of medicine.*" (Emphasis added.)

We concede that there may be some degree of confusion in this affidavit. However, this can be resolved during a *voir dire* of the witness at trial. Our responsibility, at this juncture, is only to construe the evidence most strongly in favor of appellant as the nonmoving party. That being said, we conclude that the attestations in Dr. Wurmbrand's affidavit were sufficient to qualify her as an expert witness. It follows that the affidavit was an appropriate material to consider on summary judgment, and the trial court's failure to consider it was reversible error. See *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138, at the syllabus. The seventh assignment of error is consequently sustained.

We next proceed to the eighth and ninth assignments of error wherein appellant contends that the lower court erred in its disposition of his other claims. As set forth previously, appellant's complaint advanced claims for medical negligence, discrimination, and infliction of emotional distress. The trial court's decision(s) granting summary judgment dealt primarily with the first of these three claims. It ignored the third claim (*i.e.*, emotional distress) entirely. This was clearly error. The trial court also ruled that, because there was no refusal of medical treatment, there was nothing to support a claim for discrimination. This ruling was not only in direct defiance of our previous judgment in *Fiske I*, determining that a *prima facia* case of discrimination had already been shown, but was also erroneous given the rebuttal evidence adduced below to the effect that appellant was denied treatment. For these reasons, the eight and ninth assignments of error are sustained as well.

We will disregard the sixth and tenth assignments of error as moot pursuant to App.R. 12(A)(1)(c). Having sustained all other assignments of error, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

KLINE, J., concurs.

HARSHA, J., concurs in judgment only.

HARSHA, Judge, concurring.

I concur in reversal solely on the grounds that the trial court abused its discretion in failing to grant appellant an extension of time within which to both depose Drs. Dale and Wheeler and to submit evidence in opposition to the motions for summary judgment. I would not address the remaining assignments of error since they are moot, but simply would reverse and remand on the basis of the first assignment of error.