HENSON et al., Appellants,

v.

HIGHLAND DISTRICT HOSPITAL; Patrick et al., Appellees.

[Cite as *Henson v. Highland Dist. Hosp.* (2001), 143 Ohio App.3d 699.]

Court of Appeals of Ohio,
Fourth District, Highland County.

No. 00CA0014.

Decided June 1, 2001.

700

*Schneble, Cass & Assoc. Co., L.P.A.,* and *Alfred Wm. Schneble III,* for appellants.

*Lindhorst & Dreidame* and *Brian M. Kneafsey, Jr.,*[1] for appellees.

EVANS, Judge.

Plaintiffs-appellants Emerl Clifton Henson and Flossie Henson appeal from the decision of the Highland County Court of Common Pleas, which granted summary judgment in favor of appellees Edward Patrick, M.D., and Medical Health Services, Inc.

Appellants argue that the trial court abused its discretion when it denied appellants additional time to gather evidence to rebut appellees' motion for summary judgment. Appellants also argue that the trial court abused its discretion in denying appellants' motion to continue trial because it did not consider the factors in *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078.

We find appellants' arguments to be without merit and affirm the judgment of the lower court.

## STATEMENT OF THE CASE AND FACTS

Early in the morning of October 18, 1992, while entering his home, plaintiff-appellant Emerl Henson fell and struck a nearby tree, rendering him unconscious and lacerating his scalp.

Appellant Emerl was brought to the Highland District Hospital Emergency Room ("ER"), in Hillsboro, Ohio, to be treated for his injuries. There, appellant Emerl saw defendant-appellee Edward Patrick, M.D. Appellant Emerl was observed to be lethargic, with slurred speech, and intoxicated. Appellee Patrick observed appellant Emerl for a total of two hours; he took x-rays of appellant Emerl's head and took one set of vital signs. No cranial computerized tomography scan ("CT scan") was performed. Appellant Emerl was then released to the care of his family.

---

1. Appellees were represented by other counsel during the course of the proceedings below.

At 12:53 p.m. that same day, appellant Emerl was brought back to the ER in a comatose state. A CT scan was then performed. The results showed severe internal injuries: a large, left frontal intracerebral hematoma, blood in the third and fourth ventricles, and right to left shift of the midline structures.

Appellant Emerl was immediately transported to the University Hospital in Cincinnati, Ohio. There, he underwent emergency surgery: a left, frontal crainiotomy with removal of the intracerebral hematoma. Appellant Emerl was left with decreased cognitive function.

On March 11, 1997, appellants filed a complaint in the Highland County Court of Common Pleas, alleging that appellee Patrick was liable for medical malpractice.[2] Appellants alleged in their complaint that appellant Emerl's injuries were exacerbated because appellee Patrick failed to adequately examine and test him.

On December 17, 1997, the parties received notice from appellees' insurance carrier, PIE Mutual Insurance Company, that an order of rehabilitation had been issued by the Franklin County Court of Common Pleas. As R.C. 3903.15 requires all proceedings involving the insured of such companies to be suspended, the trial court stayed the proceedings until September 23, 1998.

On July 14, 1999, the trial court issued a scheduling entry, requiring expert-witness disclosure by September 15, 1999, and scheduling the commencement of the trial for May 8, 2000.

On March 27, 2000, appellees filed a motion for summary judgment alleging that appellants had failed to proffer evidence to show causation, that is, appellees argued that appellants could not establish that a deviation from the appropriate standard of care by appellee Patrick was the direct and proximate cause of appellant Emerl's injuries. Appellees also filed, with the motion for summary judgment, the affidavit of Dr. Robert Reed, a neurologist who performed an independent medical examination of appellant Emerl. Dr. Reed stated in the affidavit that, in his expert opinion, the care and treatment provided by appellee Patrick was not the cause of any of appellant Emerl's injuries.

On April 7, 2000, appellants filed a motion for an extension of time to file their response to appellees' motion for summary judgment. The trial court granted appellants' motion on that same day.

On April 17, 2000, appellants filed a memorandum in opposition to appellees' motion for summary judgment. This motion was supported by the affidavit of Dr. Franklin Robinson. This affidavit, in appellants' own words, "was unsigned

2. Highland District Hospital was named as a defendant in the complaint; however, plaintiff filed a Notice of Dismissal of Defendant Highland District Hospital Pursuant to Rule 41(A) Without Prejudice. Therefore, the appeal before this court does not involve this party.

and * * * failed to state [Dr. Robinson's] opinions to a reasonable degree of medical certainty."

On April 18, 2000, appellees filed a reply memorandum in support of their motion for summary judgment, as well as a motion to strike the affidavit of Dr. Robinson. Appellees argued that the affidavit of Dr. Robinson was improper for three reasons: (1) Dr. Robinson was not listed as a potential expert witness by the court-imposed September 15, 1999 disclosure deadline[3]; (2) Dr. Robinson was not competent to testify, pursuant to Evid.R. 601, because less than half of his professional time was devoted to the clinical practice of neurosurgery; and (3) Dr. Robinson's opinions in his affidavit were not stated to a reasonable degree of medical certainty. Thus, appellees argued, because Dr. Robinson's affidavit was improper, appellants had failed to provide any evidence linking appellant Emerl's injuries to the purported negligence of appellee Patrick. Accordingly, appellees maintained, summary judgment should be granted in their favor.

On April 19, 2000, oral argument on appellees' motion for summary judgment was held. At this hearing, appellants provided myriad excuses as to why they had produced no proper evidence to establish causation. Thus, appellants requested that the lower court (1) grant them leave to obtain the affidavit of Dr. Inwood, who had been listed by appellants as a potential expert witness prior to the court-imposed September 15, 1999 disclosure deadline; (2) leave to obtain an additional expert, whom appellants would "obtain immediately"; and (3) a continuance of the trial "for a very short period."

On April 24, 2000, the trial court filed a judgment entry granting appellees' motion for summary judgment. On that same day, appellants filed a series of motions: a motion for leave to substitute Dr. Timothy Pirnat as an expert, as he was not listed as a potential expert witness by the September 15, 1999 disclosure deadline; a motion for continuance of trial; and, finally, a supplemental memorandum in opposition to appellees' motion for summary judgment, with the affidavit of Dr. Pirnat attached.

On April 25, 2000, the trial court issued an entry denying appellants' April 24, 2000 motions. The lower court stated that the motions were moot because they were filed after the lower court issued its judgment entry granting appellees' motion for summary judgment.

Appellants filed a timely appeal assigning the following errors for our review:

"Assignment of Error No. I

---

3. Indeed, appellants disclosed as their potential expert witnesses Drs. Hwa Shain Yeh, Samuel Kiehl, and Mary Inwood.

"The trial court abused its discretion when it refused to allow the appellant[s] a brief time to obtain additional evidence to rebut appellees' motion for summary judgment.

"Assignment of Error No. II

"The trial court abused its discretion when it denied appellants' motion to continue trial without considering the required factors set forth in *State v. Unger*."

We address appellant's assignments of error *seriatim*.

I

Appellants assert in their first assignment of error that the trial court abused its discretion when it denied appellants additional time to gather evidence to rebut appellees' motion for summary judgment. We disagree.

The decision to grant a continuance is entrusted to the sound discretion of the trial court. See *State v. Grant* (1993), 67 Ohio St.3d 465, 620 N.E.2d 50. Likewise, Civ.R. 56(F) permits the trial court to grant a continuance so that additional discovery may be obtained by a party in order to oppose a motion for summary judgment; this too is committed to the sound discretion of the trial court. See *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 591 N.E.2d 752.

The trial court's decision to deny a continuance should not be reversed absent a showing of an abuse of discretion. See *Carlton v. Davisson* (1995), 104 Ohio App.3d 636, 662 N.E.2d 1112. The term "abuse of discretion" has been defined by the Supreme Court of Ohio as "more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157–158, 16 O.O.3d 169, 173, 404 N.E.2d 144, 148–149.

In evaluating the discretion of a lower court, a reviewing court must be circumspect. The fact that the reviewing court might reach a different conclusion than did the lower court does not establish abuse of discretion. See *Cox v. Fisher Fazio Foods, Inc.* (1984), 13 Ohio App.3d 336, 13 OBR 414, 469 N.E.2d 1055. Rather, the reviewing court must demonstrate that the lower court's exercise of discretion was "not justified by, and clearly against, reason and the evidence; * * * such action must plainly appear to effect an injustice to the appellant." *Sinclair v. Sinclair* (1954), 98 Ohio App. 308, 57 O.O. 347, 129 N.E.2d 311. Against this backdrop, we will consider whether the trial court abused its discretion in the case *sub judice*.

Appellants, in an effort to defeat appellees' motion for summary judgment, offered the affidavit of Dr. Robinson. This affidavit, by appellants' own admission, was unsigned and failed to state the expert's opinion to a reasonable degree of medical certainty. As we noted earlier, appellants did not disclose Dr. Robinson as an expert prior to the court-imposed September 15, 1999 discovery deadline. Further, we note that the lower court, on April 7, 2000, granted appellants additional time to respond to appellees' motion for summary judgment.

On April 19, 2000, oral argument on appellees' motion for summary judgment was held. At this hearing, appellants provided, for the first time, myriad excuses as to why they had failed to produce proper evidence required to establish causation:

"The basis of [the request for a continuance] was the unusual difficulties encountered by [appellants] in obtaining and presenting an expert opinion on the issue of proximate cause which came as a ssurprise [*sic*]. As noted, these difficulties included Dr. Robinson's failing health and Dr. Inwood's continuing lack of cooperation."

Thus, appellants requested that the lower court grant them leave to file another affidavit, to name another expert, or to continue the trial. The lower court denied appellants' requests.

Appellants allege that the trial court abused its discretion by denying appellants time to gather evidence to rebut appellees' motion for summary judgment. In support of this argument, appellants rely heavily on the *Fiske* cases: *Fiske v. Rooney* (1995), 105 Ohio App.3d 269, 663 N.E.2d 1014 ("*Fiske I*"), and *Fiske v. Rooney* (1998), 126 Ohio App.3d 649, 711 N.E.2d 239 ("*Fiske II*"). We find that appellants' reliance on these cases is misplaced, as the circumstances involved in *Fiske II* are substantially different from those involved in the instant matter.

Plaintiff William Fiske alleged that he was denied treatment by the defendants—an HMO, a hospital, and an on-call surgeon—because he was HIV positive. Two appeals resulted from this case; both appeals resulted from the lower court's granting summary judgment—first in favor of the plaintiff, and then in favor of the defendants. We will briefly address each appeal.

In *Fiske I*, the defendants appealed the lower court's grant of summary judgment in favor of the plaintiff. The appellate court reversed the lower court because the affidavit supporting the plaintiff's motion for summary judgment was found to be insufficient under Evid.R. 601. In the case *sub judice*, we note that the affidavit of Dr. Robinson, filed with appellants' memorandum in opposition to appellees' motion for summary judgment, was also improper under Evid.R. 601.

On remand from the decision in *Fiske I*, the plaintiff scheduled the depositions of two key witnesses—both of whom were doctors employed by one of the

defendants—well within the discovery deadline imposed by the trial court. However, neither of these witnesses was able to attend these scheduled depositions. Accordingly, the plaintiff rescheduled the dates of the depositions at a time that was beyond the court-imposed discovery deadline. The plaintiff then explained this to the trial court, requesting a continuance. The trial court denied this request and granted the defendants' motion for summary judgment.

In *Fiske II*, the plaintiff appealed the lower court's grant of summary judgment in favor of defendants. The *Fiske II* court reversed the trial court, basing its decision largely on what it characterized as the "sandbagging" of appellant's evidence. The *Fiske II* court explained that "the [depositions of the two key witnesses] were only 'voluntarily' cancelled in the technical sense. The reality of the situation is that [the depositions] were cancelled to accommodate opposing counsel. A professional courtesy was extended to [the defendants] and [they] sought to exploit the courtesy for [their] own benefit." *Fiske II* at 657, 711 N.E.2d at 244.

In the instant matter, the exercise of discretion by the trial court was not tainted by allegations of trickery or misrepresentation, as was the case in *Fiske II*. Here, appellants had ample opportunity to secure the evidence required to avoid summary judgment: at least two months to name expert witnesses and then seven months before the hearing on the motion. The trial court exercised its discretion, unconvinced by appellants' excuses in oral argument, and found in favor of appellees. We find no evidence in the record· tantamount to the circumstances involved in *Fiske II*.

We do, however, find the circumstances involved in *Fiske I* to be relevant to the instant matter: *Fiske I* and the case *sub judice* both involve the failure of a party to meet its burden because the affidavit supporting its motion was insufficient under Evid.R. 601.

We emphasize that trial courts are not obligated to delay proceedings until such a time that a party can piece together enough evidence to sustain its required burden. See *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 13 O.O.3d 191, 392 N.E.2d 1316; accord *Ramsey v. Edgepark, Inc.* (1990), 66 Ohio App.3d 99, 583 N.E.2d 443. Indeed, to permit such an approach would surely result in the gridlock of our judicial system.

To establish an abuse of discretion, appellants must demonstrate that the trial court acted arbitrarily, unreasonably, or unlawfully. Appellants have not met this burden.

Appellants' first assignment of error is overruled.

## II

■ Appellants argue in their second assignment of error that the trial court abused its discretion in denying their motion to continue trial because it did not consider the factors in *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078.

As we overruled appellants' first assignment of error, finding that the lower court did not abuse its discretion in denying appellants additional time to gather rebuttal evidence, the lower court's finding of summary judgment in favor of appellees stands. Thus, appellants' second assignment of error is rendered moot: it is of no consequence to appellants whether we find the trial court to have erred in denying appellants' request for a continuance of the trial. See *James A. Keller, Inc. v. Flaherty* (1991), 74 Ohio App.3d 788, 791, 600 N.E.2d 736, 738 (holding that "[i]t is not the duty of a court to decide purely academic or abstract questions"). Nevertheless, we will briefly address appellants' argument.

■ It is not entirely clear from appellants' brief which motion is the subject of their second assignment of error—the oral motion from the April 19, 2000 hearing, or the written motion filed with the trial court after it released its judgment entry. Since the latter cannot be addressed by this court as it was filed after the judgment entry was released, we see no need to address it further.

■ In regard to the oral motion made at the April 19, 2000 hearing, we find any potential prejudice to appellants to be substantially outweighed by "concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger*, 67 Ohio St.2d at 67, 21 O.O.3d at 43, 423 N.E.2d at 1080. Moreover, an examination of the trial record, in light of the analysis provided in *Unger*,[4] yields no basis for finding that the trial court abused its discretion in denying appellants' request for a continuance of trial.

---

**4.** The *Unger* court provided guidance for appellate courts in analyzing a trial court's decision to deny a request for continuance:

"As the Supreme Court stated in *Ungar v. Sarafite* [ (1964), 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921, 931]: 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'

"Appellant urges us to adopt * * * a balancing test which takes cognizance of all the competing considerations. We wholeheartedly agree. *Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.*

"In evaluating a motion for a continuance, a court *should note, inter alia:* the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance;

Appellants' second assignment of error is overruled.

Therefore, appellants' assignments of error are overruled *in toto*, and the judgment of the Highland County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PETER B. ABELE, P.J., and HARSHA, J., concur.

and other relevant factors, depending on the unique facts of each case." (Emphasis added.) *Unger,* 67 Ohio St.2d at 67–68, 21 O.O.3d at 43, 423 N.E.2d at 1080.