OPINION
{¶ 1} Plaintiffs-appellants, Charles S. Sigler and his wife, Linnea, appeal from the decision of the Warren County Court of Common Pleas granting summary judgment to defendant-appellee, Paramount Parks, Inc., d.b.a. Paramount's Kings Island, with respect to the Siglers' negligence and premises liability action.
 {¶ 2} On September 23, 1999, the Siglers traveled in their recreational vehicle ("RV") to the Kings Island Campground, near Cincinnati, Ohio. Traveling with them was their then-employee, Mike Vail. The Siglers had never been to this campground before. When they arrived, the campground's office was closed. A sign instructed persons to choose a campsite and pay when the office reopened.
 {¶ 3} The Siglers drove around to select a campsite. All of the camping sites have gravel parking surfaces or "pads," except for the ones at campsites number six and eight which are asphalt. Charles noticed the asphalt parking pads from approximately 100 yards away and decided to park at campsite number six, since it was paved. The asphalt pad at campsite number six was approximately 37 feet in length and 10 feet in width, and had a four-inch curb running the length of its southern border, which transitioned down to the campsite's grass and gravel surface.
 {¶ 4} Charles approached the camping pad from the south. He stopped to unhook the vehicle that he was towing with his RV. After doing so, he backed his RV onto the asphalt pad with Vail's guidance. After parking the RV on the asphalt pad, he went to exit the vehicle from its only door, which is located on the vehicle's passenger side. When he opened the RV's door, the vehicle's retractable steps deployed. As he alighted from the RV, his first step came down directly on the four-inch curb, causing him to twist his ankle, lose his balance and fall. As a result, he fractured his left hip, which required surgery.
 {¶ 5} On September 11, 2001, the Siglers filed a complaint in the Hamilton County Court of Common Pleas against Kings Island.[1] The Siglers' complaint raised claims for negligence, premises liability and loss of consortium. The case was subsequently transferred to the Warren County Court of Common Pleas. On October 21, 2002, Kings Island moved for summary judgment with respect to the Siglers' claims. The Siglers responded with a memorandum in opposition to Kings Island's summary judgment motion, and, in the alternative, a motion for a continuance to permit them to conduct additional discovery, pursuant to Civ.R. 56(F).
 {¶ 6} On December 17, 2002, the trial court issued a decision awarding summary judgment to Kings Island. In support of its decision, the trial court noted:
 {¶ 7} "The evidence does not show that the area where the plaintiff fell was defective or unsafe for its intended use. Consequently there is no negligence on the part of the defendant.
 {¶ 8} "More importantly, the evidence undisputedly shows that the area where the RV was parked, particularly the area where the plaintiff fell, was open and obvious to the plaintiff and should have been readily discernible."
 {¶ 9} The Siglers appeal from the trial court's decision awarding summary judgment to Kings Island, raising three assignments of error.
 Assignment of Error No. 1 {¶ 10} "THE TRIAL COURT ERRED BY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED UPON THE OPEN AND OBVIOUS DOCTRINE."
 {¶ 11} The Siglers argue that the trial court erred by granting Kings Island's summary judgment motion because (1) under Ohio law, the open-and-obvious doctrine no longer serves as a complete bar to recovery in trip and fall cases; and (2) genuine issues of material fact exist in this case regarding whether the four-inch curb on the asphalt parking pad was an open and obvious danger. We disagree with this argument.
 {¶ 12} In evaluating a trial court's determination of a summary judgment motion, an appellate court engages in an independent review of the record; it need not defer to the trial court's ruling. Prest v. DeltaDelta Delta Sorority (1996), 115 Ohio App.3d 712, 715. In conducting this independent review, an appellate court applies the same standard used by the trial court. Midwest Ford, Inc. v. C.T. Taylor Co. (1997),118 Ohio App.3d 798, 800. Pursuant to Civ.R. 56, a trial court should grant summary judgment only when (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harlessv. Willis Day Whse. Co. (1978), 54 Ohio St.2d 64, 66. The non-moving party is entitled to have the evidence construed most strongly in his favor. Id. The burden of showing that no genuine issue of material fact remains rests upon the party moving for summary judgment. Id.
 {¶ 13} The open-and-obvious doctrine provides that "[a]n occupier of premises is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." Sidle v. Humphrey (1968), 13 Ohio St.2d 45, paragraph one of the syllabus.
 {¶ 14} Initially, the Siglers argue that the Ohio Supreme Court abrogated the open-and-obvious doctrine in Texler v. D.O. SummersCleaners Shirt Laundry Co., 81 Ohio St.3d 677, 1998-Ohio-602. However, the Ohio Supreme Court recently has rejected this interpretation of Texler, holding instead that the open-and-obvious doctrine remains viable in this state. Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573, syllabus, approving and following Sidle.
 {¶ 15} The Siglers next contend that a genuine issue of material fact exists as to whether the four-inch curb on the asphalt parking pad at the Kings Island Campground posed an open-and-obvious danger which Charles should have recognized and protected himself against. We disagree with this contention.
 {¶ 16} "The rationale underlying the open-and-obvious doctrine is `that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.' [Citation omitted.] A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers. [Citations omitted.] When applicable, however, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." Armstrong, 99 Ohio St.3d at ¶ 5.
 {¶ 17} The photographs of the asphalt parking pad submitted by Kings Island clearly show that the curb which Charles tripped over constituted an open and obvious hazard which he should have been aware of and should have taken steps to protect himself against. The Siglers argue that Charles did not see the four-inch curb. But the fact that a plaintiff may not have actually seen a danger that caused him or her harm is insufficient to demonstrate that the hazard was latent rather than open and obvious. Charles had at least two opportunities to observe the four-inch curb. The first came when he drove up to the parking pad from the south. The curb would have been plainly visible to anyone coming from that direction.
 {¶ 18} The second came when Charles deployed his RV's retractable steps. The Siglers contend that the retractable steps obscured Charles' view of the curb, making it impossible for him to see the curb on which he tripped and fell. But it is obvious that the steps did not obscure his view to the extent he is trying to suggest. If the retractable steps actually made it impossible for Charles to see the curb as he contends, then his first step off the RV's retractable steps would have been on the grass and gravel area abutting the parking pad, and not on the parking pad's curb. In order for Charles to have first stepped on the curb after walking down the retractable steps of his RV, he would have had to park in a spot that would have afforded him an opportunity to view the four-inch curb. It is clear from the evidence presented that Charles had a full and fair opportunity to see the four-inch curb on the asphalt parking pad at least twice, to recognize the danger posed by stepping on the four-inch curb, and to take appropriate measures to avoid that danger.
 {¶ 19} In support of their claim that a genuine issue of material fact exists with respect to whether the curb presented an open-and-obvious danger, the Siglers cite the testimony of Kings Island Security Officer Jeff Conrad, who stated at his deposition that the curb "was not necessarily obvious to him." The Siglers acknowledge that Kings Island submitted an affidavit from Conrad following his deposition in which Conrad stated that the curb was not obvious to him because Charles was in the way, but that after he was removed, the curb became "easy to see." But the Siglers counter by arguing among other things that Conrad's affidavit testimony demonstrates that the curb "can be obscured and rendered hard to see." We find this argument unpersuasive.
 {¶ 20} Nothing in Conrad's deposition or affidavit testimony convinces us that a genuine issue of material fact exists regarding the open and obvious nature of the four-inch curb. Conrad's deposition testimony states, in relevant part, as follows:
 {¶ 21} "Q. What's your understanding of what Mr. Sigler fell on?
 {¶ 22} "A. He fell on the pavement that was there.
 {¶ 23} "Q. The edge of the asphalt?
 {¶ 24} "A. Yes, sir.
 {¶ 25} "Q. Okay. Was the edge of the asphalt obvious to you when you got there?
 {¶ 26} "A. When I — when I got there, no. But it became obvious, certainly.
 {¶ 27} "Q. When you first got there and were looking around, it wasn't necessarily obvious to you?
 {¶ 28} "A. Wasn't necessarily obvious, no."
 {¶ 29} Conrad's affidavit states in relevant part:
 {¶ 30} "4. Upon my arrival at the campsite where Mr. Sigler's accident occurred, I found Deerfield EMS already on the scene rendering first aid to Mr. Sigler.
 {¶ 31} "5. The edge of the asphalt pad where Mr. Sigler reportedly fell was not obvious to me upon my arrival at the scene because my attention was on the EMS activity treating Mr. Sigler and because Mr. Sigler, himself, was still laying on top of the edge when I arrived.
 {¶ 32} "6. Upon arrival, I had no idea what had happened and was trying to speak to those present to determine how the accident occurred.
 {¶ 33} "7. Mr. Sigler was stretched out and covering the asphalt edge until he was rolled onto a board by the EMS personnel.
 {¶ 34} "8. When I was told he twisted his ankle on the asphalt edge, I looked at it and had no difficulty seeing the edge of the asphalt.
 {¶ 35} "9. I observed a clear contrast between the asphalt and the adjacent gravel and grass.
 {¶ 36} "10. Free of the obstruction of Mr. Sigler, the edge was easy to see."
 {¶ 37} Contrary to what the Siglers claim, there is no contradiction between Conrad's deposition testimony and his affidavit testimony. When Conrad's deposition and affidavit testimony are read in context, it is apparent that Conrad was merely pointing out in his affidavit that upon his initial arrival, the curb was not obvious to him, but when Charles was moved out of the way by paramedics, the curb did become obvious to him. Having examined Conrad's deposition and affidavit testimony in context, we conclude that that testimony cannot be fairly construed as an "admission of a party opponent" that the curb was a latent defect, rather than an open and obvious danger, even when it is examined in a light most favorable to the Siglers.
 {¶ 38} The Siglers also point to expert testimony they submitted in opposition to Kings Island's summary judgment motion, in which their expert opined that the edge or curb on the asphalt parking pad was not readily discernible. But this opinion testimony on the ultimate question of whether the four-inch curb or edge was an open and obvious danger is insufficient to establish the existence of a genuine issue of material fact with regards to that issue in this case. For the reasons previously stated, we conclude, as a matter of law, that reasonable minds could only conclude that the four-inch curb constituted an open and obvious hazard, which Charles should have recognized and taken precautions to avoid.
 {¶ 39} In light of the foregoing, the trial court did not err by granting summary judgment to Kings Island on the basis of the open-and-obvious doctrine.
 {¶ 40} The Siglers' first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 41} "THE TRIAL COURT ERRED BY HOLDING, AS A MATTER OF LAW, DEFENDANT WAS NOT NEGLIGENT."
 {¶ 42} The Siglers argue that the trial court erroneously decided their negligence claim as a matter of law, rather than as a question of fact. They contend that they presented sufficient evidence on every essential element of a negligence claim, and, therefore, the trial court erred by awarding Kings Island summary judgment on that cause of action. They further fault the trial court for not specifying what element of their negligence claim on which they failed to make an adequate showing. We disagree with each of these contentions.
 {¶ 43} The trial court found that the four-inch curb was an open and obvious danger which Sigler should have recognized and taken steps to avoid. The trial court, therefore, concluded that Kings Island owed no duty to Charles to warn him about it. See Armstrong, 99 Ohio St.3d at ¶ 14. We have concluded that the trial court was justified in determining that the four-inch curb was open and obvious, and that Kings Island owed no duty to Charles in that regard. Therefore, the trial court was obligated to grant summary judgment in favor of Kings Island as to Sigler's negligence and premises liability action. Id.
 {¶ 44} The Siglers' second assignment of error is overruled.
Assignment of Error No. 3
 {¶ 45} "THE TRIAL COURT ERRED BY NOT GRANTING PLAINTIFF-APPELLANT'S 56(F) REQUEST FOR A CONTINUANCE TO OBTAIN PREVIOUSLY REQUESTED DISCOVERY."
 {¶ 46} The Siglers argue that the trial court abused its discretion by failing to grant their Civ.R. 56(F) request for a continuance to allow them to obtain inspection records with respect to campsite number six for the five years preceding Charles' accident. We disagree with this argument.
 {¶ 47} Civ.R. 56(F) states:
 {¶ 48} "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."
 {¶ 49} Under Civ.R. 56(F), the decision to grant or deny a party's motion for a continuance to permit discovery to be had rests within the sound discretion of the trial court, whose decision will not be reversed on appeal absent a showing of an abuse of discretion. Henson v. HighlandDist. Hosp. (2001), 143 Ohio App.3d 699, 704. The trial court abuses its discretion only when its decision is unreasonable, arbitrary or unconscionable. See id.
 {¶ 50} The trial court did not expressly address the Siglers' motion for a continuance, yet the Siglers argue, and we agree, that the trial court implicitly overruled the motion. However, we disagree with the Siglers' assertion that the trial court's decision amounted to an abuse of discretion. The central issue raised by Kings Island's summary judgment motion was whether or not the curb over which Charles tripped was latent or open and obvious. We have concluded that the trial court did not err in concluding that it was open and obvious. The bottom line in this case is that the evidence submitted reveals that the curb over which Charles tripped presented an open and obvious hazard that he reasonably should have discovered and taken steps to protect himself against. The Siglers provide no convincing explanation as to how any of the evidence they were seeking could have possibly altered this conclusion, nor can we think of any. Under these circumstances, we conclude that the trial court did not abuse its discretion in implicitly overruling the Siglers' motion for a continuance under Civ.R. 56(F).
 {¶ 51} The Siglers' third assignment of error is overruled.
 {¶ 52} The trial court's judgment is affirmed.
WALSH, P.J., and GRADY, J., concur.
Grady, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
[1] The Siglers also brought suit against a second defendant who, apparently, manufactured some type of orthopedic equipment, possibly involving an artificial joint for Charles' damaged hip. That equipment was implanted into Charles, but turned out to be defective, and it had to be replaced. That defendant was voluntarily dismissed from this action by the Siglers. In any event, this portion of the Siglers' action does not concern us here.