OPINION
{¶ 1} Plaintiffs-appellants Siegfried and Beate Kramer [hereinafter "Kramer"] appeal the decision of the Mahoning County Common Pleas Court which entered summary judgment in favor of defendants-appellees Estate of Frank Anzellotti, Donald Hepfner, and Anzellotti, Sperling, Pazol, and Small Co., L.P.A. The issue before us is whether a genuine issue of material fact exists regarding the alleged legal malpractice of the attorneys. Specifically, Kramer contends that a genuine malpractice issue exists because he lost the right to litigate a claim in Ohio and had to litigate that claim in Germany after his attorneys repeatedly failed to perfect service in accordance with the Hague Convention. He also claims they negligently advised that he had no claim for negligent accounting. For the following reasons, the judgment of the trial court is reversed and this case is remanded for further proceedings.
 STATEMENT OF THE CASE {¶ 2} Kramer owned Ilka Ceramics, Inc. in Beloit, Ohio. In January 1988, Kramer entered into an agreement to sell the business to his fellow German citizen, Anita Poeppinghaus [hereinafter "the buyer"]. The agreement specified that it would be governed by the laws of Germany. The purchase price was set at $200,000 payable in installments. Then, paragraphs 7(a) through (d), known as the "performance" portion of the agreement, provided Kramer's terms of employment. For five years, the buyer was to employ Mr. Kramer with commission and pay him a percentage of net earnings. The company was to provide health and life insurance for him for five years.
 {¶ 3} Some months later, a financial statement prepared by an accounting firm showed a heavy loss. Kramer's employment was discontinued, and the buyer stopped making the installments due on the purchase price.
 {¶ 4} Kramer subsequently sought the advice of a German attorney, who initially advised him to file suit in Germany for $86,500, the balance of the purchase price. In the summer of 1991, the German attorney filed this action, which is known in Germany as a fast-tracked "documents" suit because the only proof required is documents such as the contract and canceled checks.
 {¶ 5} Kramer did not immediately file what is known in Germany as a "performance" suit for the alleged breach of the employment contract because it appeared the buyer would successfully defend such an action by arguing that Kramer financially ruined the company. However, in preparing for the German "documents" suit, Kramer discovered substantial accounting errors in the financial statement. Thus, he decided he could successfully sue the buyer for breach of his employment contract. His German attorney advised him to bring this "performance" suit in Ohio. So, Kramer retained Attorney Anzellotti and his firm, to file the action against the buyer in Mahoning County in July 1992. Attorney Hepfner assisted Attorney Anzellotti.
 {¶ 6} Two attempts at service on the buyer failed. Attorney Hepfner testified at his deposition that he believed their first attempt at service was inadequate due to the failure to include a German translation of the summons and complaint. However, when a translation was added to the second attempt in April 1993, the service still failed. (Hepfner Depo. 25). Apparently, the buyer successfully argued that service was ineffective under the Hague Convention. Attorney Hepfner admitted that he did not research the provisions of this international treaty. He also admitted that the treaty should be reviewed if one is aware of it. Yet, he attempted to argue that the German attorney should have advised Kramer who then should have advised the Ohio attorneys about any special procedures for foreign service, without mentioning that the service issues at least partially revolved around international law, not the internal laws of Germany. (Hepfner Depo. 24-25, 37-38).
 {¶ 7} In July 1993, after the two failed service attempts, the buyer filed a declaratory judgment action in Germany asking the German court to declare that Kramer had no claims against her besides his possible "documents" suit for the balance of the purchase price. Kramer was forced to counterclaim in Germany to preserve his argument that the buyer breached the "performance" portion of the contract, even though this is the subject of the suit he retained his Ohio attorneys to file.
 {¶ 8} In September 1993, the Ohio court dismissed Kramer's suit without prejudice for failing to perfect service on the buyer within one year. In November 1993, the Ohio attorneys then filed a second action against the buyer in Mahoning County; however, service failed again (for the third time) due to incorrect service procedures.
 {¶ 9} Meanwhile, the "documents" part of the German suit proceeded to judgment on May 16, 1994, where the court awarded Kramer $86,500 for the balance of the purchase price wrongfully withheld by the buyer. After waiting to see if service would finally be perfected in the Ohio suit, the German court finally decided it could wait no longer and issued a ruling in the buyer's declaratory action on the "performance" portion of the contract. On August 12, 1994, the German court ruled that Kramer had no further claims arising out of the purchase agreement; thus, his counterclaim for breach of employment contract was overruled.
 {¶ 10} In December 1994, the second Ohio case was dismissed for want of prosecution since service was never perfected. It appears other service attempts, after the third, were also lacking in some manner.
 {¶ 11} A third Ohio suit was then filed. Service was perfected on the buyer for the first time on February 15, 1996, well after three years of faulty attempts. However, the Ohio court stayed this suit pending a German appellate decision.
 {¶ 12} Thereafter, the German appellate court affirmed the judgment for the buyer on the "performance" part of the contract. Their decision was set forth in a part judgment on November 21, 1996; the other part of the judgment, involving an issue unrelated to the case before us, was rendered on April 17, 1997
 {¶ 13} Kramer's Ohio attorneys then voluntarily dismissed the third Ohio suit in June 1997. Nonetheless, they refiled the suit (making that the fourth Ohio suit) a few days later, apparently based upon a hope that the German court would stay its proceedings (even though they were in the appellate stages) if the Ohio suit could no longer be voluntarily dismissed. (Hepfner Depo. 39).
 {¶ 14} The fourth Ohio suit was stayed pending an appeal to the German Supreme Court. The German Supreme Court procedurally ended that appeal in May 1998 without a merit decision; thus, the German appellate court's holding remained valid.
 {¶ 15} Finally, in 1998, Kramer sued his Ohio attorneys for legal malpractice in Federal District Court. On May 6, 2000, Kramer and his former Ohio attorneys signed an agreement whereby Kramer agreed to dismiss the federal case without prejudice and the former attorneys agreed that the statute of limitations would be tolled pending a final judgment in Kramer v. Poeppinghaus,
Mahoning County Common Pleas Court Case Number 97CV2132, which is the fourth suit mentioned above.
 {¶ 16} In August 2000, Kramer amended his Ohio suit against the buyer to allege the contract was void due to breach, seeking rescission of the sale and return of all assets or their market value. The buyer filed a motion to dismiss on the grounds of forum non conveniens. The trial court sustained the motion and dismissed the case on July 19, 2001. This court affirmed that decision in Kramer v. Poeppinghaus, 7th Dist. No. 01CA149, 2002-Ohio-6433.
 {¶ 17} After our decision, Kramer refiled his legal malpractice action against his former Ohio attorneys on December 18, 2002, in Mahoning County instead of federal court. Kramer's main claim was that the attorneys' negligently failed to properly perfect service on the buyer. He alleged that such negligence caused him to lose his right to proceed with his action in the United States. He also alleged that the attorneys negligently advised that Ohio was the proper forum and that he should split his causes of action. Additionally, he claimed that they induced him not to pursue all of his legal remedies in Germany. Finally, Kramer contended that the attorneys negligently advised him regarding his potential claim for negligent accounting.
 {¶ 18} In June 2003, the attorneys filed motions for summary judgment. First, they argued that Kramer's German attorney was the one who advised Kramer to split his causes of action. Second, they noted that the buyer's German declaratory action and Kramer's counterclaim therein encompassed the same subject matter as the suit the attorneys were trying to commence in Ohio; thus, they contended that Kramer had the opportunity to fully litigate his claim. Third, the attorneys claimed the buyer may not have been precluded from bringing the declaratory action in Germany even if they had properly served her and commenced the initial Ohio suit. They focused on language in the German judgment, implying that because Ohio Civ.R. 41(A) allows voluntary dismissal, a pending Ohio suit would not preclude a German suit. Lastly, the attorneys emphasized that the trial court dismissed Kramer's Ohio suit due to forum non conveniens and that our court affirmed this dismissal. Hence, they believe that even if they had properly served the buyer in the 1992 suit, that suit would have been dismissed.
 {¶ 19} Kramer responded that if the attorneys would have properly perfected service on the buyer on one of the first two tries, then the buyer would not have felt harassed and would not have filed for declaratory judgment in Germany or such action would have been stayed (and ultimately dismissed) pending litigation of Kramer's "performance" cause of action in Ohio. He also argued that there is a genuine issue as to the attorneys negligently advising him that he could not file a claim for negligent accounting against the accountant who prepared an erroneous financial statement, which caused the buyer to breach the contract. Attached to Kramer's response, was his own affidavit and a letter from a Ph.D. at Youngstown State University, which set forth the errors in the financial statement. The attorneys' reply restated their initial arguments and responded to the negligent accounting claim by noting that the federal malpractice complaint and Kramer's deposition taken in that federal case and introduced in this case never mentioned negligent accounting.
 {¶ 20} On October 24, 2003, the trial court granted summary judgment for all three defendants. Kramer filed timely notice of appeal.
 SUMMARY JUDGMENT LAW {¶ 21} As per the typical summary judgment analysis, this court reviews the trial court's decision de novo. NationwideMutual Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, even after viewing the evidence in a light most favorable to the non-movant, reasonable minds can only conclude there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390.
 {¶ 22} In seeking summary judgment, the movant has the initial burden to identify the portions of the record that demonstrate the absence of a genuine issue for trial. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. The portions of the record that may be viewed at this point are pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. Civ.R. 56(C). The burden then shifts to the non-movant to demonstrate that there exists a genuine issue of material fact. Dresher,75 Ohio St.3d at 293. The non-movant may not rest on its pleadings alone but must set forth a genuine issue for trial by affidavit or otherwise. Id.; Civ.R. 56(E). Since summary judgment may not be granted on each issue unless reasonable minds can only find against the non-movant, courts must contemplate awarding summary judgment with caution. Civ.R. 56(C).
 LEGAL MALPRACTICE LAW {¶ 23} In order to establish a cause of action for legal malpractice, the plaintiff must allege proof regarding duty, breach, and a causal connection between the conduct complained of and the resulting damage or loss. Vahila v. Hall (1997),77 Ohio St.3d 421, 427. In order to establish proximate cause, there is no per se rule requiring a legal malpractice plaintiff to establish that he would have won the underlying case had the attorney not breached his duty. Krahn v. Kinney (1989),43 Ohio St.3d 103 (plaintiff need not have his criminal conviction reversed to show legal malpractice). See, also, Vahila,77 Ohio St.3d at 429 (extending Krahn to the civil context).
 {¶ 24} The causation analysis depends on the facts of each particular case, and thus, in many cases, the merits of the malpractice action do not always depend upon the merits of the underlying action in the causation analysis. Id. at 426, 427-428. Thus, summary judgment is not automatic merely because the plaintiff would not have been successful in the original suit in which the malpractice allegedly occurred.
 ASSIGNMENTS OF ERROR {¶ 25} Kramer's App.R. 16(A)(3) statement of the assignments, purports to set forth two assignments of error:
 {¶ 26} "The trial court erred where genuine issues of material fact precluded its granting of defendant's motion for summary judgment."
 {¶ 27} "Where a movant makes no argument and presents no evidence contrary to a claim of negeligence, its motion for summary judgment has not been made and supported pursuant to civil rule 56 and summary judgment in its favor must be reversed."
 {¶ 28} However, these assignments are not later argued separately as required by App.R. 16(A)(7). Instead, Kramer sets forth a "Law and Argument" section where he places all his arguments. We shall arrange his arguments into the fashion we see fit.
 {¶ 29} We should first note that although in his deposition Attorney Hepfner denied that any duties were breached when service was not perfected, the attorneys do not really present arguments regarding the duty and breach elements on appeal. Rather, the focus is on whether the alleged breach of duty proximately caused injury to Kramer. Regardless, a reasonable person could find that a duty was breached when service repeatedly failed due to an alleged failure to comply with the Hague Convention and other irregularities.
 {¶ 30} Kramer's argument is divided into two main issues, one revolving around the lawsuit against the buyer and one revolving around the missed opportunity to sue the accountant for negligent accounting. The crux of Kramer's first argument on appeal is that his former Ohio attorneys committed malpractice by failing to serve the buyer properly and in accordance with the Hague Convention. He concludes that the failure to timely serve the buyer and commence the lawsuit is the sole reason that he lost the opportunity to have his "performance" case tried in Ohio, where he believes he would have had a better opportunity to prove his breach of employment contract case since all his evidence and witnesses were here. He concludes that if the Ohio action had been timely commenced, then the buyer would not have filed a declaratory action on the "performance" portion of the contract or the German court would have stayed any such action pending a decision in Ohio.
 {¶ 31} The attorneys respond in various ways. For instance, the attorneys argue that there is no evidence to support Kramer's claim that the German lawsuit on performance would not have proceeded if service had been perfected in a timely manner. Certain language in the November 21, 1996 German appellate judgment entry is at issue here. That language is as follows:
 {¶ 32} "2. Contrary to the opinion of plaintiff the monetary suit filed in the USA does not invalidate the demand for declaratory judgment. It is, however, true that a monetary suit pending in court is a hindrance for a declaratory suit denying the claim if said declaratory suit is filed in another litigation procedure later. (compare: BGH NJW 1989, 2064). In the present case, however, the filing of the suits on July 29, 1992 and on Nov. 1, 1993 were annulled. The monetary suit filed on March 30, 1995 after the filing of the counter suit does not interfere with the admissibility of the declaratory counter suit.
 {¶ 33} "3. The lately filed monetary suit does not contradict the declaratory interest needed for the declaratory counter suit. The court in Ohio has not yet fixed a date for a hearing on the monetary suit. According to rule 41.1 of the Ohio [Rules] of Civil Procedure plaintiff can withdraw from his suit anytime before commencement of the hearing without consent of the defendant. As long as such a one-sided withdrawal is possible the interest in the pending negative declaratory suit prevails. (compare: BGH LM Para. 256 ZPO No. 184 mvN)."
 {¶ 34} This is later restated by the German court as follows:
 {¶ 35} "2. As opposed to the opinion of the Plaintiff and the Counter-Defendant Beate Kramer, their suit for payment which is pending in the USA does not make the counter-claim at 1. for declaratory judgement impermissible. While this could be true in case of a claim for performance which has been filed later on
in a different lawsuit, when the validity of a claim for performance is being denied by introducing an action for declaratory judgment (cf. German Federal Supreme Court NJW 1989, 2064), in the case at bar the pendency of the actions filed with the court in Ohio on July 29, 1992 and on November 1, 1993, has been terminated when the actions were each dismissed as impermissible. Inasmuch the claim for performance was filed on March 30, 1995, i.e. after the counter-claim was already pending, the (possible) pendency which was establishedthereafter does not impair the permissibility of the counter-claim for declaratory judgement.
 {¶ 36} "3. The most recently filed action for performance does also not impair the legal interest in the counter-claim for declaratory judgement which is required for the same. The Ohio court has not yet set a trial date regarding the action for performance. According to Rule 41 subpara. 1 lit. a of the Ohio Rules of Civil Procedure a plaintiff in this stage of a legal action may still unilaterally withdraw his claim at any time. As long as the possibility to unilaterally withdraw a claim is not excluded the legal interest in the counter-claim for declaratory judgement remains in existence. (cf. German Federal Supreme Court LM § 256 ZPO no. 184 with further citations)."
 {¶ 37} Kramer believes these passages support his argument. That is, if service was properly perfected in one of the first two tries in the first lawsuit, then the German trial court would never have rendered judgment. His deposition notes that an expert advised him that the German Supreme Court has precedent stating that a "performance" action takes precedence over a declaratory judgment action even if the "performance" action is filed later. The attorneys believe, however, that the passages support their argument because the German appellate court implied that the trial court would not have stayed the case if the Ohio case was subject to voluntary dismissal.
 {¶ 38} However, there is no evidence of what the Germantrial court would have done. Moreover, it appears the appellate court's passages imply that the German trial court would have been forced to stay the case if Kramer's suit had been filed with proper service, then voluntarily dismissed under Civ.R. 41(A), and then refiled so that it could no longer be voluntarily dismissed by Kramer. Notably, this is the exact technique theseattorneys attempted after they finally perfected service in the third suit; they voluntarily dismissed and refiled so that the case could no longer be dismissed at will. Attorney Hepfner's deposition explains this strategy and interpretation of the German appellate decision. Thus, they cannot now avoid the significance of this strategy.
 {¶ 39} Reasonable minds could find that if the attorneys repeated attempts to serve the buyer did not fail, then the Ohio suit could have been filed and refiled in such a manner that the German court would have stayed its decision on the "performance" part of the contract pending resolution in Ohio. Additionally, one could read the roughly translated German appellate decision as meaning that an Ohio "performance" suit that is filed first would require stay or dismissal of a later filed German case but a stay or dismissal is only required in a later filed Ohio "performance" suit if that suit can no longer be dismissed at will. This interpretation would mean that if service had been perfected in the first suit, then the German court would not have proceeded in the later filed German suit, regardless of Ohio's voluntary dismissal option.
 {¶ 40} Either way, our response to the attorneys' next argument is dispositive. Specifically, the attorneys argue that because Kramer had the opportunity to litigate the issues in Germany, they believe he suffered no loss. However, encompassed in the loss claimed by Kramer is his alleged right to have the suit tried in Ohio. Also encompassed in the claimed loss are damages suffered over the years of failed service and refiling. Kramer's deposition disclosed that his German attorneys' fees increased each time his Ohio's attorneys' negligence caused a delay. Moreover, he is required to pay the buyer's attorneys' fees as a result of losing on the employment contract claim in Germany, whereas Ohio does not generally follow a loser pays system. (Kramer Depo. 88-90).
 {¶ 41} Kramer also believes he would have been more likely to win his employment contract suit in Ohio. As Kramer's affidavit notes, he was placed in a disadvantaged position by having to argue his own employment contract case as a defendant and forced to forgo much of the voluminous evidence that existed in Ohio and the availability of Ohio witnesses. Still, we need not dwell on the potential merits of his underlying employment contract suit because Kramer can sue for malpractice even if one believes he would have lost that underlying suit to the buyer. As we mentioned when setting forth some general law on legal malpractice, the plaintiff in a legal malpractice action need not always establish he would have won the underlying lawsuit in order to avoid summary judgment. Vahila,77 Ohio St.3d at 426-429
(holding that the plaintiff can establish harm other than losing the entire suit, such as a greater criminal sentence or a missed opportunity to settle a civil suit).
 {¶ 42} Thus, regardless of whether he had an opportunity to litigate in Germany and regardless of whether he would have won the suit against the buyer in Ohio, the drawn out service process and attempted Ohio litigation still had financially negative effects on Kramer, which may not have existed had the initial suit been properly commenced. Upon construing the evidence in the light most favorable to Kramer, a rational juror could find that attorneys' breach of duty proximately caused some actionable loss.
 {¶ 43} The attorneys also argue that even if service had been perfected on the first try, the Ohio lawsuit would have been dismissed on grounds of forum non conveniens, pointing to the trial court's eventual dismissal and our affirmance. In our decision, we noted the expense to Ohio courts to research, translate, and learn German law and procedure. Kramer v.Poeppinghaus, 7th Dist. No. 01CA149, 2002-Ohio-6433, at ¶ 25-26. We pointed out that a German court is likely the best forum to apply German laws, especially since Kramer chose to (partially) initiate his suit in Germany in the first place. Id. at ¶ 22, 24-26. We also noted that the general principle of judicial economy is diminished where a party splits his case. Id. at 21-22.
 {¶ 44} Although we focused much attention on the factors surrounding the application of German laws and Kramer's choice of Germany as the forum for the "documents" case, our conclusion was based upon an analysis and careful weighing of all the relevant public and private interests factors in recognition that the trial court has discretion when dismissing for forum non conveniens. Id. at ¶ 14-27.
 {¶ 45} In fact, we also specifically placed weight upon theneed to avoid duplicative lawsuits and the importance of thedoctrine of res judicata. Id. at 22, 27. Such factors would not have weighed against Kramer in our analysis if the first Ohio suit had been properly and immediately commenced and had the forum non conveniens issue thus arisen at a time prior to the decision in the buyer's declaratory action in Germany concerning the employment portion of the contract.
 {¶ 46} As such, it is clear that at least part of our decision was based upon the fact that the German court already rendered a decision on the merits. Moreover, we were merely reviewing the factors to uphold the trial court's use of its discretion to dismiss under the doctrine of forum non conveniens. The Ohio trial court may likely have denied the motion to dismiss for forum non conveniens if such motion was made in 1992 when Kramer retained his attorneys to file suit.
 {¶ 47} Further, the attorneys skirt the fact that the decision of the Ohio trial court dismissing the fourth suit and this court's affirmance were made on an amended complaint asking for rescission of the contract. The decisions were not made on the breach of employment contract complaint the attorneys were employed to file; prior to the forum non conveniens decisions, Kramer had amended his claims since he already lost his "performance" action in Germany and knew he would not be permitted to relitigate the exact claims here.
 {¶ 48} The test here is whether reasonable minds could only conclude that the suit would have been dismissed for forum non conveniens. Reasonable minds could differ on the issue. Viewing the evidence in the light most favorable to Kramer, there is a genuine issue of material fact on this issue.
 {¶ 49} Furthermore, as analyzed in addressing the attorneys' first response, whether or not Kramer would have won the Ohio suit is irrelevant to his legal malpractice claim. Kramer set forth that the breach of duty proximately caused him to suffer loss over the years of improperly attempted services. This fact alone is enough to defeat summary judgment on the failure to properly serve issue. Thus, the entry of summary judgment is reversed and the issue of legal malpractice concerning the failure to properly commence the Ohio lawsuit is remanded.
 {¶ 50} We now move to Kramer's second argument. He contends that at the least, there is a genuine issue regarding whether the attorneys improperly advised him that he did not have a negligent accounting claim. He states that the buyer breached the contract based upon the heavy loss reflected in an incorrect financial statement. He claims that he informed his Ohio attorneys about this issue, but they informed him that he had no cause of action.
 {¶ 51} The attorneys allege that in his deposition (which was taken in the federal case and introduced in this case), he explained that he discovered the accounting error in 1991 when he was preparing for his German "documents" suit. However, Kramer never mentioned that his attorneys' failed to advise him of his potential claim for negligent accounting. They note that his later affidavit (attached to his response to summary judgment in the Ohio case) states for the first time that the attorneys negligently advised him regarding his negligent accounting claim. The attorneys cite our case of Kollmorgan v. Raghavan (May 5, 2000), 7th Dist. No. 98CA123, for the proposition that Kramer cannot avoid summary judgment by stating a claim in the affidavit that he failed to state in his prior deposition.
 {¶ 52} The attorneys' review of Kollmorgan is lacking. More specifically, Kollmorgan held that a non-movant cannot defeat a summary judgment motion with an affidavit that directlycontradicts prior deposition testimony unless explanation isgiven for the contradiction. Id., citing Fiske v. Rooney
(1998), 126 Ohio App.3d 649. See, also, Pace v. GAF Corp. (Dec. 18, 1991), 7th Dist. No. 90-J-49 (if affidavit is inconsistent with prior deposition as to material fact and there is no suggestion that the affiant was confused at the deposition and no other reason is given for the inconsistency, then the affidavit does not create a genuine issue).
 {¶ 53} Here, the affidavit does not "directly" contradict the deposition. Rather, the deposition merely fails to mention that he was incorrectly advised regarding the accounting error. There is no rule that a plaintiff being deposed must explain every claim he has in order to avoid summary judgment later. We also note that Kramer's affidavit attempts to explain the contradiction by stating that he has "since learned" that he has a negligent accounting claim. Regardless, the attorneys' motions for summary judgment say absolutely nothing about the negligent accounting claim. As such, the attorneys could not meet their initial burden as movants, and so, Kramer's reciprocal burden as non-movant never activated.
 {¶ 54} We note that although the attorneys did not mention the negligent accounting claim in their motion for summary judgment, they did mention it in their reply to Kramer's response to their summary judgment motion. They did not cite Kollmorgan.
Instead, they opined that Kramer raised the accounting problem for the first time in his response to their summary judgment motion, claiming that he failed to raise it in his complaint. However, Kramer's accounting claim is clearly set forth in his complaint. Finally and importantly, Kramer's affidavit states that he was negligently advised, but this claim was not factually rebutted by the attorneys in any manner.
 {¶ 55} The attorneys also suggested that because he did not raise the issue in the federal case, which they allowed him to dismiss with the statute of limitations tolled, he should not be permitted to raise it now. However, their agreement to toll the statute of limitations does not limit the issues involved in the legal malpractice action. Moreover, they failed to raise a statute of limitations defense in the present case.
 {¶ 56} For the foregoing reasons, the judgment of the trial court is hereby reversed and this case is remanded as there exist genuine issues of material fact on both the failed service claim and the negligent accounting claim. Judgment accordingly.
Waite, P.J., concurs.
DeGenaro, J., concurs.