[Cite as *In Re A.B.*, 2019-Ohio-90.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Case No. 18CA13 |
| A.B. D.O.B. 7/21/2011 | : | |
| B.B. D.O.B. 7/21/2014 | : | |
| | : | |
| JARVIS BATEMAN, | : | |
| | : | DECISION AND JUDGMENT |
| Plaintiff-Appellee, | : | ENTRY |
| | : | |
| vs. | : | |
| | : | |
| GINA SUFRONKO, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 01/08/19** |

_____

APPEARANCES:

Susan L. Gwinn, Athens, Ohio, for Appellant.

K. Robert Toy, Athens, Ohio, for Appellee.

_____

McFarland, J.

{¶1} Gina Sufronko, mother of A.B. and B.B., appeals the Juvenile Division of the Athens County Court of Common Pleas' judgment granting Jarvis Bateman, alleged father of A.B. and B.B., full custody of both A.B. and B.B. On appeal, Appellant contends that 1) an adjudication granting custody to the putative father and assigning parental rights and responsibilities should be set aside where the biological mother was denied her right to be represented by counsel, was not properly notified of the

hearing, and where she had no opportunity to present arguments or to be heard at said hearing, as violating the substantive and due process rights of the mother; and 2) an adjudication granting custody to the putative father and assigning parental rights and responsibilities should be set aside where the father has not established paternity, as the court lacked subject matter jurisdiction. Because we conclude questions regarding whether Jarvis Bateman was, in fact, the biological father of the children did not divest the juvenile court of subject matter jurisdiction with respect to a custody complaint filed in juvenile court, Appellant's second assignment of error is overruled. Further, although we reject the arguments raised under Appellant's first assignment of error, we have sua sponte determined that the trial court failed to make a best interest determination in granting Appellee custody of the children at issue. As such, the judgment of the trial court must be reversed and this matter is remanded for further proceedings consistent with this opinion.

FACTS

{¶2} Appellee, Jarvis Bateman, filed a complaint for custody/court ordered visitation on June 21, 2017, essentially alleging that he was concerned for the safety of his children, A.B. and B.B., and that Appellant, the mother of the children, had recently moved out of the family's home,

was living with another man, and had a known drug addiction. Appellee attached an affidavit in support of his complaint averring, among other things, that he was the biological father of the children at issue, that he was present at the birth of both of the children, and that he had lived with them until two months prior. The record further reflects that the parties were never married, there had been no prior legal custody determinations, and the children were not wards of any other court. Further, there is no evidence in the record regarding Appellee's establishment of paternity regarding the children.

{¶3} An initial hearing was held on August 31, 2017. Appellant appeared pro se and Appellee appeared with counsel. The parties requested mutual drug testing, which was ordered by the magistrate. A second hearing was held on November 9, 2017. Appellant appeared pro se, but requested a continuance citing the fact she had an appointment scheduled with attorney Christopher Tenoglia. The trial court denied the request for a continuance and in light of the fact Appellant's drug screen was positive and Appellee's was negative, the magistrate placed the children in the temporary custody of Appellee. A third hearing was held on February 15, 2018. Appellant again appeared pro se, explaining that she had spoken with Attorney Tenoglia's secretary and had paid his office a significant sum of money. However, Mr.

Tenoglia had not yet entered an appearance and did not appear at the hearing. The magistrate continued the temporary custody order with Appellee and urged Appellant to obtain counsel and get her counsel involved on her behalf.

{¶4} The court scheduled a final hearing on April 19, 2018. The hearing notice issued by the clerk listed Attorney Toy's name at the bottom, but did not list Appellant's name or the guardian ad litem's name. A review of the record reveals that none of the notices of hearing sent by the clerk included Appellant's name. Some listed the guardian's name. All of them listed Attorney Toys' name. The final hearing was held on April 19, 2018, and Appellant failed to appear. Upon inquiring with the deputy clerk as to whether Appellant was properly served and being satisfied that she was, the magistrate proceeded with a short hearing, noting that Appellee would essentially be granted "Judgment by Default" due to Appellant's failure to appear.

{¶5} Thereafter, Appellant retained counsel and filed a motion to set aside the judgment as well as a motion for paternity testing. Appellant argued she did not receive notice of the final hearing. The magistrate denied the motions. At the request of the trial court, Attorney Toy drafted a short entry for the court's signature noting Appellant's failure to appear, awarding

custody of the children to Appellee, and limiting Appellant's parenting time

to the sole discretion of Appellee.  It is from this final order that Appellant

now brings her timely appeal, assigning the following errors for our review.

ASSIGNMENTS OF ERROR

"I.     AN ADJUDICATION GRANTING CUSTODY TO THE
        PUTATIVE FATHER AND ASSIGNING PARENTAL RIGHTS
        AND RESPONSIBILITIES SHOULD BE SET ASIDE WHERE THE
        BIOLOGICAL MOTHER WAS DENIED HER RIGHT TO BE
        REPRESENTED BY COUNSEL, WAS NOT PROPERLY
        NOTIFIED OF THE HEARING, AND WHERE SHE HAD NO
        OPPORTUNITY TO PRESENT ARGUMENTS OR TO BE HEARD
        AT SAID HEARING AS VIOLATING THE SUBSTANTIVE AND
        PROCEDURAL DUE PROCESS RIGHTS OF THE MOTHER.

II.     AN ADJUDICATION GRANTING CUSTODY TO THE
        PUTATIVE FATHER AND ASSIGNING PARENTAL RIGHTS
        AND RESPONSIBILITIES SHOULD BE SET ASIDE WHERE THE
        FATHER HAS NOT ESTABLISHED PATERNITY AS THE
        COURT LACKED SUBJECT MATTER JURISDICTION."

ASSIGNMENT OF ERROR II

{¶6} We address Appellant's second assignment of error first, out of

order, as it raises a subject-matter jurisdiction argument.  In her second

assignment of error, Appellant contends that the trial court's adjudication

granting custody to Appellee, who Appellant characterizes as the putative

father, and assigning parental rights and responsibilities should be set aside

as Appellee has not established paternity and the trial court lacked subject-

matter jurisdiction.  Appellant contends the issue presented is whether a

court has subject-matter jurisdiction to decide legal custody and assign parental rights and responsibilities in the absence of the establishment of paternity.

{¶7} The existence of the trial court's subject matter jurisdiction is a question of law that we review de novo. *Tewksbury v. Tewksbury*, 4th Dist. Pike No. 07CA771, 2008–Ohio–4600, ¶ 15; citing *State ex rel. ACCSEA v. Balch*, 4th Dist. Athens No. 06CA26, 2007–Ohio–7168, ¶ 22; *Yazdani–Isfehani v. Yazdani–Isfehani*, 170 Ohio App.3d 1, 2006–Ohio–7105, 865 N.E.2d 924, ¶ 20; citing *State v. Moore*, 4th Dist. Highland No. 03CA18, 2004–Ohio–3977, ¶ 8, and *Burns v. Daily*, 114 Ohio App.3d 693, 701, 683 N.E.2d 1164 (1996). Therefore, we do not grant any deference to the trial court's conclusion, *Tewksbury, supra*; citing *Balch* at ¶ 22. Here, we note that Appellant never challenged the trial court's subject-matter jurisdiction of this matter below. However, "[b]ecause subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time." *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11.

{¶8} " '* * * Jurisdiction * * * is the "right and power to * * * apply the law[.]" ' " *State v. Lowery*, 4th Dist. Ross No. 16CA3533, 2016-Ohio-7701, ¶ 7; quoting *State v. Rode*, 11th Dist. Portage No. 2010–P–0015,

2011–Ohio–2455,¶ 15; in turn quoting The American Heritage Dictionary,

Second College Edition 694 (1982). "Subject-matter jurisdiction" is used

when referring to a court's authority to act. *Lowery* at ¶ 7; citing *Cleveland v.*

*Persaud*, 6 N.E.3d 701, ¶ 16 (Feb. 10, 2014). "Subject-matter jurisdiction"

of a court connotes the power to hear and decide a case upon its merits, and

defines the competency of a court to render a valid judgment in a particular

action. *Id*. A judgment rendered by a court lacking subject-matter

jurisdiction is void. *Lowery* at ¶ 7; citing *Cleveland v. Kutash*, 8th Dist.

Cuyahoga No. 99509, 2013–Ohio–5124, ¶ 8; *Patton v. Diemer*, 35 Ohio

St.3d 68, 518 N.E.2d 941, paragraph three of the syllabus (1988).

{¶9} The judicial power of the state is vested in "such other courts

inferior to the supreme court as may from time to time be established by

law." Section 1, Article IV, Ohio Constitution. *Rode, supra*, at ¶ 16. In

Ohio, by Section 1, Article IV of the Ohio Constitution, the General

Assembly has been given the power to provide for various different

divisions of the courts of common pleas. The lower court at issue here is the

Juvenile Division of the Athens County Court of Common Pleas.

{¶10} Appellant contends that the trial court lacked subject-matter

jurisdiction in this particular case, based upon an argument that Appellee

had never established paternity and, as such, was only a "putative" father.

Appellant argues that she, as an unmarried mother, was the sole residential parent as there was no presumption of Appellee's paternity under Ohio law, and that R.C. 3109.042 requires the existence of the presumption of paternity for the "father" to become a party to custody proceedings involving an unwed mother. Appellee responds by arguing that Appellant acknowledged from the beginning of the case that Appellee was the children's father, and that there was never a request for paternity testing because of her acknowledgement.

{¶11} Title 31 of the Ohio Revised Code governs domestic relations and specifically, children. As set forth by Appellant in her brief, R.C. 3109.042 governs the custody rights of unmarried mothers and provides as follows:

> "(A) An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation."

However, we note that the proceedings below took place in juvenile court, not domestic court.

{¶12} R.C. 2151.23 governs the jurisdiction of juvenile courts and provides, in pertinent part, as follows:

"(A) The juvenile court has exclusive jurisdiction under the
Revised Code as follows:
* * *
(2) Subject to divisions (G), (K), and (V) of section 2301.03 of
the Revised Code, to determine the custody of any child not a
ward of another court of this state."[1]

Here, the record indicates the parties were never married and that no custody determination had ever been made with respect to the children. Further, there is no evidence in the record before us indicating that the children herein were wards of any other court at the time Appellee filed his motion for custody. Additionally, Juv.R. 10 govern complaints and provides in pertinent part in section (A) as follows: "[a]ny person may file a complaint to have determined the custody of a child not a ward of another court of this state[.]"

{¶13} We agree with Appellant that, based upon the record before us, it appears Appellee's status as to the children is that of a "putative father." R.C. 3107.01 defines a "putative father" as follows:

"a man, including one under age eighteen, who may be a child's
father and to whom all of the following apply:

(1) He is not married to the child's mother at the time of the
child's conception or birth;
(2) He has not adopted the child;
(3) He has not been determined, prior to the date a petition to
adopt the child is filed, to have a parent and child relationship
with the child by a court proceeding pursuant to sections

---

[1] R.C. 2301.03(G)(K) and (V) have no applicability in the present case.

3111.01 to 3111.18 of the Revised Code, a court proceeding in another state, an administrative agency proceeding pursuant to sections 3111.38 to 3111.54 of the Revised Code, or an administrative agency proceeding in another state;
(4) He has not acknowledged paternity of the child pursuant to sections 3111.21 to 3111.35 of the Revised Code."

Also relevant to this determination is R.C. 3111.03, which governs presumptions as to father and child relationships, and which provides as follows:

(A) A man is presumed to be the natural father of a child under any of the following circumstances:
(1) The man and the child's mother are or have been married to each other, and the child is born during the marriage or is born within three hundred days after the marriage is terminated by death, annulment, divorce, or dissolution or after the man and the child's mother separate pursuant to a separation agreement.
(2) The man and the child's mother attempted, before the child's birth, to marry each other by a marriage that was solemnized in apparent compliance with the law of the state in which the marriage took place, the marriage is or could be declared invalid, and either of the following applies:
(a) The marriage can only be declared invalid by a court and the child is born during the marriage or within three hundred days after the termination of the marriage by death, annulment, divorce, or dissolution;
(b) The attempted marriage is invalid without a court order and the child is born within three hundred days after the termination of cohabitation.
(3) An acknowledgment of paternity has been filed pursuant to section 3111.23 or former section 5101.314 of the Revised Code and has not become final under former section 3111.211 or 5101.314 or section 2151.232, 3111.25, or 3111.821 of the Revised Code.

{¶14} Here, based upon the limited record before us, it appears

Appellee meets the definition of putative father and fails to meet the

requirements in order for there to be a presumption as to his paternity.[2]

{¶15} However, the Supreme Court of Ohio considered a similar

situation in *In re Byrd*, 66 Ohio St.2d 334, 421 N.E.2d 1284 (1981).  In

*Byrd*, the Court held as follows in paragraphs one and two of the syllabus:

> "1. When the alleged natural father of an illegitimate child, who
> has participated in the nurturing process of the child, files a
> complaint seeking custody of the child under R.C.
> 2151.23(A)(2), and the mother admits that he is the natural
> father of the child, the natural father has equality of standing
> with the mother with respect to the custody of the child.
>
> 2. In such case, the court shall determine which parent shall
> have the legal custody of the child, taking into account what
> would be in the best interests of the child."

In reaching its decision, the *Byrd* Court reasoned as follows:

> "Appellant argues that not until the natural father has
> legitimated the child should he have equal standing with the
> mother with respect to custody. While we agree with appellant
> that legitimation of a child is always a preferred goal, we cannot
> agree that legitimation is a prerequisite for the natural father to
> have equality of standing with the mother in a R.C.
> 2151.23(A)(2) custody action. We reach this result for two
> reasons. First, there are three methods in Ohio by which a father
> can legitimate his child: (1) in an acknowledgment proceeding
> brought under R.C. 2105.18[]; (2) by adopting the child; or (3)
> by marrying the mother.  All these methods require the consent
> of the mother, and therefore the mother can thwart any attempt

---

[2] The fact that separate child support proceedings had been initiated by one of the parties was referenced on the record during the final hearing below, however no information regarding the status of that case or whether Appellee had, in fact, established paternity as part of that case was made part of the record below.

by the natural father to legitimate the child. Our second reason for not requiring legitimation is that such a requirement would not necessarily be in the best interest of the child, and would, in fact, result in dissimilar treatment between legitimate and illegitimate children." (Internal footnote omitted).

{¶16} Since *Byrd* was decided, the legislature remedied the first concern expressed by the Court regarding the fact that the only ways a father can legitimate his child all require the mother's consent.  R.C. 3111.04, which originally took effect in 1982, not long after the *Byrd* decision was released, now provides that "a man alleged or alleging himself to be the child's father[]" may bring an action to determine the existence or nonexistence of the father and child relationship."  The bringing of this action does not require the consent of the child's mother.  As such, the first concern underlying the *Byrd* decision has now been addressed.  However, the second concern expressed in *Byrd* still remains.  Our research reveals that the *Byrd* decision has not been reversed or modified and remains good law today.  Here, as in *Byrd*, the record before us indicates that Appellee was present at the birth of both A.B. and B.B., participated in their care and lived with them until just a few months prior to the filing of the complaint for custody.  Further, Appellant appeared at three different hearings, albeit without counsel, but never challenged Appellee's paternity and made otherwise affirmative statements acknowledging he was father of the

children.  Thus, we believe this case falls squarely within the application of

*Byrd*.

{¶17} Further, and more recently, the Supreme Court of Ohio

determined that a juvenile court magistrate did not patently and

unambiguously lack jurisdiction to proceed on a child custody matter

involving a complaint for custody filed by a putative father. *State ex rel.*

*Mosier v. Fornof*, 126 Ohio St.3d 47, 2010-Ohio-2516, 930 N.E.2d 305.

Although *Mosier* involved a request for a writ of mandamus, it is

nevertheless instructive on the issue of a court's subject matter jurisdiction

in custody cases.  In particular, on the issue of subject matter jurisdiction,

the Court reasoned that the juvenile court had subject matter jurisdiction to

award custody of a child to a putative father, stating as follows: "* * *

Mosier's claim alleges, at best, an error in the court's exercise of its

jurisdiction rather than a lack of subject-matter jurisdiction. *See Jimison v.*

*Wilson*, 106 Ohio St.3d 342, 2005-Ohio-5143, 835 N.E.2d 34, ¶ 11.  The

*Mosier* Court ultimately denied Mosier's request for a writ of mandamus,

reasoning that the juvenile judge and magistrate below did "not patently and

unambiguously lack jurisdiction to determine child-custody matters in the

underlying case * * *." *Mosier* at ¶ 7.

{¶18} In light of the foregoing, we are satisfied that the trial court possessed the requisite subject-matter jurisdiction to determine the custody of A.B. and B.B. upon the filing of a complaint for custody by the putative father, where the putative father was present at the birth of the children and participated in the nurturing process, and where the mother admitted, or at least did not dispute, the paternity of the children.[3]  Accordingly, we find no merit to Appellant's second assignment of error and it is overruled.

ASSIGNMENT OF ERROR I

{¶19} In her second assignment of error, Appellant contends that an adjudication granting custody to the putative father and assigning parental rights and responsibilities should be set aside where the biological mother was denied her right to be represented by counsel, was not properly notified of the hearing, and where she had no opportunity to present arguments or to be heard at said hearing, as being violative of substantive and procedural due process.  Appellee contends that Appellant was aware of her right to counsel, had communicated with counsel, but that no counsel ever entered an appearance on her behalf.  Appellee also contends Appellant was provided with notice of the final hearing, but that she failed to appear.

---

[3] Although Appellant filed a motion for paternity testing, through counsel, after the magistrate issued a decision awarding custody of the children to Appellee, she never filed an answer to Appellee's complaint for custody in which he averred, in an affidavit filed in support of his motion, that he was the children's father.  Further, Appellant appeared at three different hearings, participated, and requested Appellee be drug tested, but she never raised the issue of paternity.  In fact, she made statements acknowledging Appellee's parents were the children's grandparents.

{¶20} The Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, provides: "No person shall * * * be deprived of life, liberty, or property, without due process of law." Parents have a fundamental liberty interest in the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S.Ct. 2054 (2000). Thus, the state may not deprive parents of their parental rights without due process of law. *In re James*, 113 Ohio St.3d 420, 2007–Ohio–2335, 866 N.E.2d 467, ¶ 16; *In re M.H.*, 4th Dist. Vinton No. 11CA683, 2011–Ohio–5140, ¶¶ 49–50. This right to due process "does not evaporate simply because [parents] have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982).

{¶21} Although "due process" lacks precise definition, courts have long held that due process requires both notice and an opportunity to be heard. *In re Thompkins*, 115 Ohio St.3d 409, 2007–Ohio–5238, 875 N.E.2d 582, ¶ 12; citing *Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701, 708, 4 S.Ct. 663, (1884); *Caldwell v. Carthage*, 49 Ohio St. 334, 348, 31 N.E. 602 (1892). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

the action and afford them an opportunity to present their objections."

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct.

652 (1950); *accord In re Thompkins* at ¶ 13. Accordingly, when the state

seeks to interfere with a parent's liberty interest in the care, custody, and

management of his or her child, the state "must attempt to provide actual

notice" to the parents. *Thompkins* at ¶ 14; citing *Dusenbery v. United States*,

534 U.S. 161, 170, 122 S.Ct. 694 (2002). Due process does not, however,

require " 'heroic efforts' " to effectuate service or that a parent receives

actual notice. *Id.*, citing *Dusenbery* at 170. Instead, the means employed

must be reasonably calculated to inform the parent of the proceeding

involving his or her child. *Id.*; citing *Mullane* at 315.

{¶22} Further, this Court recently noted as follows in *In re A.G.*

regarding notice and the right to counsel:

> " 'Ohio courts hold that where a parent is provided notice of his
> or her "right to counsel, but fails to pursue it, [the parent] has
> not been denied [the] statutory right to counsel." *In re Williams*,
> Franklin App. No. 03AP–1007, 2003–Ohio–678, ¶ 13, citing *In
> re Careuthers* (May 2, 2001), Summit App. No. 20272; *In re
> Ramsey Children* (1995), 102 Ohio App.3d 168, 169–170. ' " *In
> re A.G.*, 4th Dist. Athens No. 14CA28, 2014-Ohio-5014, ¶ 22;
> citing *In re T.F.*, 4th Dist. Pickaway No. 07CA34, 2008–Ohio–
> 1238.

{¶23} We first address Appellant's contention that she was deprived

of her right to counsel. Juv.R. 4(A) governs assistance of counsel in juvenile

proceedings and provides as follows:

> "(A) Assistance of Counsel. Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute."

{¶24} Here, the record reflects that Appellant was initially served with Appellee's complaint for custody and court-ordered visitation and appeared at the first hearing that was held.  A return of service appears in the record showing Appellant was personally served with the complaint.  Further, the hearing transcript from the first hearing indicates that Appellant appeared and participated in the hearing, pro se, and represented to the court that she did not have an attorney and had not spoken to an attorney.  Appellant did not claim to be indigent or ask for appointed counsel.  Instead, she asked that Appellee be drug tested and informed the court she could pay the $350.00 fee for the drug testing.

{¶25} A second hearing was held on November 9, 2017, and Appellant again appeared and participated.  Appellant began the hearing by asking for a continuance and stating that she had hired an attorney to represent her.  "We review the denial of a motion for a continuance for

abuse of discretion." *State ex rel. Athens Cty. Dept. of Job & Family Servs. v. Martin*, 4th Dist. Athens No. 07CA11, 2008–Ohio–1849, ¶ 22; *See also Gussler v. Morris*, 4th Dist. Ross No. 06CA2884, 2006–Ohio–6627, ¶ 8. An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "The trial court has broad discretion in ruling on requests for continuances. * * * However, that discretion is not unlimited." *State v. Miller*, 5th Dist. Tuscarawas No. 86AP060038, 1987 WL 9876 (Apr. 20, 1987) (internal citation omitted).

{¶26} "Our review of a denial of a motion for a continuance requires us to 'apply a balancing test, thereby weighing the trial court's interest in controlling its own docket, including the efficient dispensation of justice, versus the potential prejudice to the moving party.' " *Foley v. Foley*, 10th Dist. Franklin Nos. 05AP–242 & 05AP–463, 2006–Ohio–946, ¶ 16; quoting *Fiocca v. Fiocca*, 10th Dist. Franklin No. 04AP–962, 2005–Ohio–2199, ¶ 7.

{¶27} "In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate

reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *State v. Unger*, 67 Ohio St.2d 65, 67–68, 423 N.E.2d 1078 (1981). Although *Unger* was a criminal matter, appellate courts have also applied these factors in civil cases. *See, e.g., King v. Kelly*, 4th Dist. Lawrence No. 02CA42, 2003–Ohio–4412, ¶ 11; *Henson v. Highland Dist. Hosp.*, 143 Ohio App.3d 699, 707, 2001–Ohio–2513, 758 N.E.2d 1166, fn. 4; *Integrated Payment Systems, Inc. v. A & M 87th Inc.*, 8th Dist. Cuyahoga Nos. 91454 & 91473, 2009–Ohio–2715, ¶ 73; *Truex v. Truex*, 179 Ohio App.3d 188, 2008–Ohio–5690, 901 N.E.2d 259, ¶ 15.

{¶28} Here, the record reflects that upon further inquiry by the magistrate it appeared Appellant had simply spoken with the attorney's secretary and had an appointment scheduled. Appellant had not actually met the attorney nor had the attorney entered an appearance in the matter, despite the fact that more than two months had passed since the initial hearing. In light of these facts and also because of Appellant's positive drug screen, the trial court denied the continuance and placed the children in the temporary custody of Appellee. When Appellant expressed concerns during the hearing that Appellee was using drugs that were not detected on the drug

screen, and that Appellee's parents, who would be taking care of the children while Appellee worked, had another son living in the house who had a drug problem, the trial court explained this was only a temporary decision and urged Appellant to get her attorney involved to help her raise these issues.

{¶29} A third hearing was held on February 22, 2018, and Appellant again appeared without counsel. When the trial court inquired of the status of her representation she stated that she had retained an attorney and paid him a significant amount of money. However, the attorney had not entered an appearance and did not appear at the hearing. At the conclusion of the hearing the following exchange took place between the magistrate and Appellant:

> "Magistrate: Here's what I'm inclined to do. I am inclined to leave it the way it is today. You say you've retained Mr. Tenoglia and . . .
>
> Ms. Sufronko: Yes.
>
> Magistrate: you've paid him a significant amount of money.
> Ms. Sufronko: Yes.
>
> Magistrate: If that's the case and he enters an appearance he can definitely argue with Mr. Toy and make sure . . .
>
> Ms. Toy: Sure.
>
> Magistrate: And they will try to resolve the issue as best they can.

Ms. Sufronko:  Okay.

Magistrate:  So if you feel that you want something set rather than informal you first need to get Mr. Tenoglia on board and then have him make those request [sic] and arguments with Mr. Toy, okay?

Ms. Sufronko:  Okay.

* * *

Magistrate:  Now again, you said no, you say yes, so the first call you want to make when you leave here is his office, okay? I mean, you didn't call him yesterday or today about I'll see you in court.

Ms. Sufronko:  I called yesterday but I didn't hear back from him.

Magistrate:  Okay, well, that must mean he thinks he's not retained.  Okay, we are off the record."

No attorney ever entered a notice of appearance on Appellant's behalf thereafter.  Further, when the final hearing took place, neither Appellant or counsel on her behalf appeared at the hearing.

{¶30} We cannot conclude under these circumstances that the trial court denied Appellant her right of representation.  To the contrary, the trial court urged Appellant to retain and work with counsel.  Although the trial court denied Appellant's request for a continuance, such decision was within its discretion to do and we cannot conclude that the trial court abused its discretion given the facts before it, which included the fact that Appellant

had a positive drug screen, Appellee did not, Appellant raised no issue regarding the paternity of the children at that time, and the decision was a temporary, rather than final.  Thus, we find no merit to this portion of Appellant's argument under her first assignment of error.

{¶31} We now turn our attention to Appellant's contention that she was deprived of due process when the trial court granted custody to Appellee and assigned parental rights and responsibilities without providing her with proper notice and an opportunity to be heard.  Appellant argued below via a Civ.R. 53 (D)(2)(b) motion to set aside, which was denied by the magistrate, and now argues on appeal, that she was not provided with notice of the final hearing.  A reviewing court will not disturb a trial court's finding regarding whether service was proper unless the trial court abused its discretion. *E.g., Huntington Natl. Bank v. Payson*, 2nd Dist. Montgomery No. 26396, 2015-Ohio-1976, ¶ 32; *Ramirez v. Shagawat*, 8th Dist. Cuyahoga No. 85148, 2005-Ohio-3159, ¶ 11.

{¶32} Service of process must be made in a manner reasonably calculated to apprise interested parties of the action and to afford them an opportunity to respond. *Price v. Combs*, 2nd Dist. Darke No. 2015-CA17, 2016-Ohio-429, at ¶ 19; *Akron–Canton Regional Airport Auth. v. Swinehart*, 62 Ohio St.2d 403, 406, 406 N.E.2d 811 (1980); citing *Mullane v. Cent.*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652 (1950). The

plaintiff bears the burden of obtaining proper service on a defendant.

*Cincinnati Ins. Co. v. Emge*, 124 Ohio App.3d 61, 63, 705 N.E.2d 408 (1st

Dist.1997).

{¶33} Because the notice of hearing at issue was issued by the clerk

and constituted a written notice subsequent to the original complaint, the

service requirements here are governed by Civ.R. 5. Civ.R. 5 provides, in

pertinent part, as follows:

> (A) Service: When Required. Except as otherwise provided in
> these rules, every order required by its terms to be served, every
> pleading subsequent to the original complaint unless the court
> otherwise orders because of numerous defendants, every paper
> relating to discovery required to be served upon a party unless
> the court otherwise orders, every written motion other than one
> which may be heard ex parte, and *every written notice*,
> appearance, demand, offer of judgment, and similar paper shall
> be served upon each of the parties. Service is not required on
> parties in default for failure to appear except that pleadings
> asserting new or additional claims for relief or for additional
> damages against them shall be served upon them in the manner
> provided for service of summons in Civ. R. 4 through Civ. R.
> 4.6.
> (B) Service: How Made.
> (1) Serving a Party; Serving an Attorney. Whenever a party is
> not represented by an attorney, service under this rule shall be
> made upon the party. If a party is represented by an attorney,
> service under this rule shall be made on the attorney unless the
> court orders service on the party. Whenever an attorney has
> filed a notice of limited appearance pursuant to Civ.R. 3(B),
> service shall be made upon both that attorney and the party in
> connection with the proceedings for which the attorney has
> filed a notice of limited appearance.

(2) Service in General. A document is served under this rule by:
\* \* \*
(c) Mailing it to the person's last known address by United
States mail, in which event service is complete upon mailing[.]"
(Emphasis added).

**{¶34}** Thus, we must begin with a presumption of proper service. In support of her argument, Appellant has attached a notice of hearing for the final hearing, dated February 22, 2018, issued by the Deputy Clerk of the Juvenile Division of the Athens County Court of Common Pleas which only lists Attorney Toy's name at the bottom. As set forth above, the magistrate denied Appellant's motion, stating in its entry that:

> "The court docket created by the clerk contemporaneously with
> her performance, demonstrates adequate notice by regular mail
> of the 4/19/18 hearing was provided to Defendant. Docket
> entry attached. Defendant may pursue her concerns by
> objections or in paternity cases #20174307 & 20174308."

The print-out of the docket entry that appears in the record lists only one of Appellant's underlying case numbers along with the following notation: "Copies sent to both parties or attorney via regular mail/box in courthouse." Although the docket only lists one of the underlying case numbers, the actual notice of hearing lists both. Further, it appears both cases were handled simultaneously throughout the pendency of the cases. Further, and importantly, although Appellant's name is not listed at the bottom of the hearing notice that was mailed by the clerk, her name was not listed on any

of the other hearing notices issued by the clerk either, yet Appellant received

notice and appeared at three prior hearings.

{¶35} Additionally, the transcript from the final hearing demonstrates

the following exchange regarding whether Appellant had been served with

notice of the hearing:

> "Magistrate:  What's the last contact you had with Ms. Sufronko?
>
> Ms. Rector [the GAL]:  The last time that we were in court.
>
> Magistrate:  Oh, . . .
>
> Ms. Rector:  Yeah, I've called and texted her but she never gets back to me.
>
> Magistrate:  Okay, fine.  And has she had any contact with the children?
>
> Jarvis Bateman:  Uh, she actually came out to the house last night.
>
> Magistrate:  She did.
>
> Jarvis Bateman:  For a little bit.
>
> Magistrate:  I see. Was the fact of the hearing discussed?
>
> Jarvis Bateman:  Uh, no it was not.
>
> Magistrate:  It was not raised, all right.  Well, she was here and, uh, it was set by hearing notice sent out by you Ms. Lewis [the Deputy Clerk].  The only thing that puzzles me here is has [sic] Mr. Toy's name and it does not have hers (unintelligible) address.

Female:  (unintelligible)

Magistrate:  Alright, so . . .

Darci [the Deputy Clerk]:  It was mailed out and nothing was returned.

Magistrate:  Okay, from now on we should probably write the other parties name there just so I can tell if they've been served. Based on your statement we sent hearing notice."

Thus, the record reflects the magistrate addressed the issue of service during the hearing, inquired directly with the deputy clerk who confirmed notice of hearing was sent by regular mail, and nothing had been returned.  Service by regular mail is acceptable under Civ.R. 5 and service was considered complete upon mailing, which was noted on the docket.

{¶36} While we agree with the magistrate that "from now on" all parties' names should be listed on hearing notices so the court can confirm they have been served, we cannot conclude, based upon the record before us, that Appellant has overcome the presumption that proper service was made. Nor can we conclude that the magistrate abused its discretion in concluding proper service was accomplished.  Thus, we also overrule this portion of Appellant's argument raised under her first assignment of error.

{¶37} However, our review of this matter does not end here. Although not raised by Appellant, this Court sua sponte finds a defect in the trial court's judgment.  During the final hearing, it was suggested that

because Appellant failed to appear, Appellee would essentially be granted

default judgment. For instance, the following exchange took place on the

record when it became apparent Appellant had failed to appear:

> "Magistrate: Mr. Tenoglia never did enter an appearance in the
> case. So, given the fact that we were suppose [sic] to start
> roughly five minutes and she's not here I'm going to proceed.
> Generally speaking that would, uh, generally result absent some
> persuasive costs to the contrary by somebody, would result in
> Mr. Toy, your client, winning the day.
>
> Mr. Toy: Okay.
>
> Magistrate: Ms. Rector, do you have any issues if I were to
> essentially grant a Judgement by Default [sic] given the fact
> that the defendant is not present.
>
> Ms. Rector: No, I have no issues.
>
> * * *
>
> Magistrate: * * * So, Mr. Toy you want to do a short Entry . . .
>
> Mr. Toy: I will do an Entry your honor. Thank you."

Thereafter, Mr. Toy prepared an entry for the court's signature which, aside

from noting service was provided, the trial court had subject-matter

jurisdiction, and due process had been complied with, simply provided as

follows:

> "IT IS HEREBY: ORDERED, that the Plaintiff be granted full
> custody of the minor children; it is further, ORDERED, that
> Defendant may have parenting time with the minor children at
> the sole discretion of the Plaintiff; it is further, ORDERED that
> Plaintiff shall claim the minor children on his federal and state

tax returns every year until the children reach the age they are
no longer able to be claimed. * * *."

Thus, it appears from the record before us that the trial court failed to take

into consideration the best interests of the children, or otherwise make any

best interest determination, in awarding Appellee custody of the children and

limiting Appellant's parenting time to the "sole discretion" of Appellee.

{¶38} As set forth above, the juvenile court had exclusive, original

jurisdiction under R.C. 2151.23 to determine the custody of the children at

issue, as they were not wards of any other court.  However, R.C. 2151.23

further provides in section (F)(1) that "the juvenile court shall exercise its

jurisdiction in child custody matters in accordance with sections 3109.04 and

3127.01 to 3127.53 of the Revised Code and, as applicable, sections 5103.20

or 5103.23 to 5103.237 of the Revised Code."  Of importance and relevance

here, R.C. 3109.04 governs courts awarding parental rights and

responsibilities and requires the best interests of the child be taken into

consideration in making those determinations. *See* R.C. 3109.04(B)(1).

{¶39} As between two parents, which is the situation here, the

universally applied standard to be used in initial custody determinations is

the best interests of the child. *See Boyer v. Boyer*, 46 Ohio St.2d 83, 346

N.E.2d 286 (1976); *see also In re Webster II*, 4th Dist. Athens No.

92CA1559, 1993 WL 373784 (reasoning that where there was no prior

custody decree and where father moved for custody prior to paternity determination, the trial court did not err in applying the standard utilized in initial custody awards between parents, which is the best interests of the child standard). *In re Webster* further cited *In re Byrd* as follows:

> "When an alleged natural father of an illegitimate child, who has participated in the nurturing process of the child, files a complaint seeking custody of the child, and the mother admits that he is the natural father of the child, the natural father of the child has equality of standing with respect to the custody of the child, *and the best interest test is applied.*" *In re Webster II* at *4; citing *In re Byrd*, *supra*, paragraphs one and two of the syllabus. (Emphasis added).

Further, although R.C. 3111.08 permits the grant of default judgment in civil actions to establish a father and child relationship, this was an action for custody, not to establish the father and child relationship, and we are aware of no such counterpart permitting default judgment in connection with child custody determinations.

{¶40} Accordingly, although we have found no merit to the assignments of error raised by Appellant, because we have sua sponte determined the trial court erred in failing to make a best interest of the children determination prior to making an initial custody determination as between two parents, the mother and putative father, the judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion.

**JUDGMENT REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. Costs are assessed to Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J.:        Concurs in Judgment and Opinion.
Harsha, J.:          Concurs in Judgment and Opinion as to Assignment of
                     Error II; Concurs in Judgment Only as to Assignment of
                     Error I.

For the Court,


BY:    _____
       Matthew W. McFarland, Judge




### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**